## THE PEOPLE v. GEORGE L. HOWES.

*Criminal law—Indorsement of names of witnesses upon informa-
tion—Evidence—Statements of respondent—Duress.*

1. Where, after the commencement of the trial of a criminal case,
   the prosecuting attorney stated to the court that he had just
   learned of two material witnesses whose names were not indorsed
   on the information, and the respondent's counsel thereupon
   waived any further showing, the indorsement of such names
   is not error.

2. The right of a respondent, under How. Stat. § 9549, to have the
   names of witnesses *known* to the prosecuting attorney indorsed
   on the information *before* the trial, is a substantial one, which
   courts cannot ignore; nor will the carelessness or neglect of the
   prosecuting officer warrant the court in permitting such
   indorsement on the trial. *People v. Price,* 74 Mich. 37 (head-
   notes 1, 2).

3. Where the question whether alleged statements of a respondent
   to an officer were freely and voluntarily made is fairly sub-
   mitted to the jury as an issue of fact, evidence of such state-
   ments is competent; but the jury should be instructed to *first*
   determine such preliminary issue, and, if they find that the
   statements were made under compulsion or duress, not to con-
   sider them in arriving at a verdict. *People v. Barker,* 60 Mich.
   279 (head-note 10).

4. Where a female witness who was employed to obtain testimony
   against a respondent charged with the larceny of money,
   because of the influence she was supposed to have over him,
   testified to his promise to make her a loan, which he after-
   wards informed her he could not do, he may testify to his rela-
   tions with the witness, and if about that time he had not pro-
   posed marriage to her, such fact being for the consideration of
   the jury in determining the question of his innocence.

Error to Genesee.    (Newton, J.)    Argued May 1, 1890.
Decided June 13, 1890.

Respondent was convicted of larceny. Judgment
reversed, and new trial granted. The facts are stated in
the opinion.

*Clarence Tinker, Lee & Aitken,* and *Sumner Howard,* for respondent.

*B. W. Huston,* Attorney General, and *Charles H. Johnson,* Prosecuting Attorney, for the people.

[The points of counsel are discussed in the opinion.— REPORTER.]

GRANT, J.    The respondent was convicted of the larceny of $900 from the safe of one J. Max Davis, in the village of Fenton.

Davis kept a jewelry store, in which he had a large burglar-proof safe, so called.    He was village treasurer, and kept the village moneys, then amounting to about a thousand dollars, as claimed by him, in this safe.    The claim of the prosecutor was that respondent entered this store on Saturday night, February 16, 1889, and either unlocked the safe, or found it left inadvertently unlocked, and stole the money.

The case presents some remarkable features, and counsel for the people and for the respondent have argued very ably and strenuously to convince this Court, the one of his guilt, and the other of his innocence.    But it is not our province to pass upon that question.    That was exclusively for the jury.    Our only duty is to determine whether such prejudicial errors were committed as to deprive the respondent of that fair and impartial trial guaranteed him by the Constitution and the law.

A very brief statement of the case will suffice for an understanding of the errors alleged.

Davis, the complaining witness, testified that the outside door of the safe was supplied with a three-tumbler combination lock, and the inside door with a four-tumbler burglar-proof lock; that this combination was known only to himself and two of his employés; that he was

the last one at the safe that night, and thought he locked it, though he could not swear positively; that his brother locked the front door of the store, and one of the boys the back door; that the respondent was in the store that evening, and, upon closing up, accompanied witness and others part of the way home; that respondent had been in the employ of Davis at various times from 1885 to February 1, 1888, and since then had been a frequent visitor at the store; that the loss of the money was not discovered until Monday morning, when the safe was opened; that the doors of the store and the safe were at that time all found securely locked.

Other evidence on the part of the prosecution tended to show that respondent, after parting with Davis and others who were with them, went to his father's, about three-fourths of a mile distant, and then returned, and was seen standing in the door-way of the store, with the door ajar; that he paid out considerable sums of money shortly after the time of the alleged larceny; and that upon his arrest he made certain statements tending to show guilt.

The prosecution further gave evidence tending to show that respondent's parents were poor, and his father a cripple, and that respondent, together with his brothers and sisters, contributed to their support; that he lived and dressed well, went into society, bought a watch and chain and ring, took music lessons; that he always worked for small wages; that he borrowed money early in the previous fall and winter; that in January previous to the robbery he sought to obtain a loan; that he was in debt in various sums to various parties at the time of the robbery; that he had paid certain of these debts shortly after the robbery; that $111.65 were found upon his person when arrested; that some five-dollar gold pieces were taken from the safe on the night of the robbery;

that one such piece was found upon his person when arrested, and that he had disposed of three more such pieces shortly after the robbery. Such, in brief, was the theory of the prosecution.

The respondent introduced evidence tending to explain these circumstances; to show where and how he had obtained the money which he had used and which he had; to explain his whereabouts on that night; and that he did not return to the store after he had left it in company with Mr. Davis, but that the time when he was seen standing in the door-way of the store with the door ajar was before the store was closed for the night; and also to show his previous good reputation, which was not questioned by the prosecution.

Further reference to the evidence at this point is unnecessary. We may here say, with propriety, that the records of criminal trials will rarely show a greater zeal and ability on the part of the prosecution than were displayed in this case to discover evidence bearing upon the guilt of the accused, and that equal zeal and ability were displayed by counsel for the respondent in his defense.

1. It is alleged that the court erred in permitting the prosecuting attorney to indorse the names of three witnesses upon the information after the trial had begun. The first two names were properly indorsed. The prosecuting attorney stated that he had just learned they were material witnesses. The respondent's counsel waived any further showing on the part of the prosecuting attorney, saying that he would take his word for it.

After the complaining witness, Mr. Davis, had been testifying for some time, Mr. Wisner, who was assisting the prosecution, said to the court:

"It has developed that Chester Hamilton, a brother-in-law of Mr. Davis, left the store with them on that occasion. Now, I don't suppose the prosecuting attorney can

say that he didn't know of that witness, because his name was mentioned on the examination, but he was not brought to the examination as a witness, because, in order to bring them all, the store would have to have been closed up entirely. Mr. Johnson requested me to draw the information, and I drew the information, and put upon it the names of the witnesses who were sworn on the examination, and inquired of the officer if those were the witnesses in the case, and he informed me they were. Through some oversight, or whatever it may be, the name of Chester Hamilton was left off the information, not intentionally."

Counsel for respondent objected to the indorsement, and thereupon Mr. Wisner, being sworn, testified as follows:

" I will state that Mr. Johnson was engaged in other criminal business, and requested me to draw the information; that I procured the testimony that was taken in justice's court, and indorsed on the information the names of the witnesses who were sworn on the examination; that I also inquired of the officer as to other witnesses, upon other branches of the case, and received certain names from him which I indorsed; that inadvertently I omitted to place the name of Chester Hamilton upon the information, and I have just discovered that fact."

The prosecuting attorney was present at the examination before the justice, and then knew of this witness. The statute required him to indorse upon the information the names of the witnesses then known to him, and authorized him to indorse the names of other witnesses at such time *before* the trial as the court may, by rule or otherwise, prescribe. How. Stat. § 9549. It needs no argument to show that the letter and spirit of this statute were violated in permitting the name of this witness to be indorsed after the trial had commenced. This right, given by the law to the accused, is a substantial one, which courts cannot ignore. The carelessness or neglect of the prosecuting attorney will not warrant the court in permitting names to be indorsed upon the trial when the

witnesses were before known to him. If Mr. Wisner was legally employed to assist the prosecution, he must be charged with the knowledge possessed by the prosecuting attorney. Under the circumstances of this case, it was especially important to the respondent that he be informed who of those who were at the time employed in the store, and who had access to it as well as to the safe, were to appear as witnesses against him. *People v. Hall*, 48 Mich. 487; *People v. Price*, 74 Id. 37.

2. The respondent was arrested by an officer named Miller on March 1 following the larceny. He had arranged with the complaining witness, Davis, to have respondent upon the train. Miller handcuffed him, a proceeding which, under the circumstances, seems to have been unnecessarily harsh, and on arriving at Flint took him by a back street to his (Miller's) office, the justice's office being closed, where they were soon joined by the prosecuting attorney and Davis. Respondent was then searched, and subjected to an examination in regard to the alleged offense. Miller testified that the prosecuting attorney informed respondent that anything he might say might be used against him on the trial, and that he need not say anything unless he saw fit, and that respondent replied: "I want to tell anything you want to know." This was denied by the respondent. Counsel for the respondent objected to any evidence of what respondent had said, on the ground that he was under duress. The evidence was admitted, Miller and Davis testifying to the conversation. We think the evidence was competent, and that it was for the jury to determine, under the circumstances, what statements were made, whether they were made under duress, and what weight should be given to them.

Upon this subject the court charged the jury as follows:
81 MICH.—26.

"While it is the duty of the jury to give the alleged admissions of the respondent such weight and credit as may be reasonable, yet it is laid down as an elementary principle that verbal admissions ought to be received with great caution. Such evidence, consisting, as it does, in the repetition of oral statements, is sometimes subject to imperfections or mistakes; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood it. The jury may also consider that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the respondent actually did say. I charge you further, gentlemen, that if the admissions and declarations of one charged with crime are made freely and understandingly, and are clearly understood by the person to whom they are addressed, and are faithfully narrated, under oath, by those to whom they are made, they are competent evidence, and should be considered by the jury, after scrutinizing the same closely, and with the same care you scrutinize evidence of oral conversations and declarations in any case."

This was correct, as far as it went; but the learned circuit judge did not go far enough to properly protect the rights of the respondent. The jury should have been instructed that it was their duty to leave out of consideration these statements, if they found that they were made under compulsion or duress, and that they should first determine that question. The circumstances under which these alleged statements were made were such as to require, in justice to the respondent, a clear and explicit charge from the court on this point.

Such a charge was of special importance to the respondent in this case, because of the interest taken in the matter by the witness Davis, and of the unusual zeal displayed by officer Miller to obtain evidence for the purpose of conviction. Miller had employed a woman to try to obtain damaging testimony from the respondent,

and told her that it was necessary to the success of the case; that she was the only one who could do it; and it must be done,—at least the woman so testified, and Miller does not deny it. This testimony will be referred to hereafter. Under Miller's instructions this woman so far forgot her own character and reputation as to tell a deliberate falsehood in order to obtain evidence against the respondent. This is but one of several circumstances showing the unjustifiable conduct of this officer. The witness Davis admitted that on the examination before the justice he was asked whether any statement was made to the respondent cautioning him as to the effect of anything he might say, and telling him that he need not speak unless he chose, and, when asked what reply he then gave, he made no answer, but afterwards admitted that his reply on the examination was: "I don't remember about that." Davis also testified that he had put over $900 of the village money in this safe in December previous, and had not counted it since, and was unable to swear positively how much money was there at the time of the robbery. On cross-examination he gave the following testimony, also:

"Q. Now, there was about $400 or thereabouts loaned out of that store that came in after this robbery?
"A. It was simply taken out of that.
"Q. Loaned to whom?
"A. I have not told.
"Q. I ask you the question now.
"A. I loaned it to myself.
"Q. How much was there?
"A. Four hundred dollars.
"Q. Was it money belonging to the village?
"A. It was taken from that drawer."

It is apparent from this that Davis had taken and used for his own purposes $400 of trust funds. Now, the only evidence of what occurred in Miller's office, and

what caution, if any, was given to respondent, comes from these two witnesses, and it is hardly possible that a conviction could have been secured without such evidence. Under these circumstances, it requires no argument to show that, in justice and fairness to the respondent, the presiding judge should have charged the jury as above indicated. We refer with approval to the language of Justice MORSE on this point in *People v. Swetland*, 77 Mich. 60, and to that of Justice CHAMPLIN in *People v. Barker*, 60 Id. 295, 296.

While we hold that the evidence was properly admitted, because an issue of fact was fairly presented to the jury as to whether the alleged statements were freely and voluntarily made, still we feel compelled to say that we do not think such proceedings are required in the due administration of the criminal law.

3. One Mrs. Segar had been induced by officer Miller to try to obtain a loan of money from respondent. She was placed upon the stand by the prosecution, and testified to her interviews with him, and that she made false statements to him in order to obtain a loan. She failed to obtain it, but testified that he promised to loan her about $150, but afterwards informed her that he could not. This witness was evidently employed to obtain testimony against respondent because of the influence she was supposed to have upon him. The respondent, when testifying, was asked by his counsel what his relations were to this woman, and whether about that time he had proposed marriage to her. This was excluded. It was competent, and should have been admitted. The jury were entitled to consider that fact as bearing upon the question of his innocence.

Counsel says in his brief:

"No person can read the charge in this case without saying it is fair and just."

We agree with him. But he then proceeds to a discussion of matters which counsel must know have no place in this Court, and we decline to discuss them. The returns and records transmitted to us from other courts are conclusive upon us, and we have not the jurisdiction nor the inclination to hear or decide issues *dehors* the record.

For the errors above stated judgment below must be reversed, and a new trial granted.

The other Justices concurred.