PEOPLE v WILLIE PEARSON

PEOPLE v LINDSAY PEARSON

PEOPLE v WYNN

PEOPLE v SCHWARTZ

Docket Nos. 57147, 56977, 57273. Argued February 3, 1977 (Calendar
    Nos. 8-10).—Decided January 8, 1979. Rehearing denied as to
    *Pearson* 406 Mich 1104.

   These cases raise claims that the failure of the prosecution to
       produce res gestae witnesses entitles the defendants to relief.

   Willie Pearson and Lindsay Pearson were convicted by a jury in
       Recorder's Court of Detroit, Robert J. Colombo, J., of first-
       degree murder. Defendants argued that a third man had partic-
       ipated in the crime and they moved at trial that Raymond
       Collins be indorsed as a res gestae witness; he had been
       charged with the murder but the charge was dismissed after
       further investigation. A police officer testified that witnesses

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 10, 21, 22] 29 Am Jur 2d, Evidence § 180.
   81 Am Jur 2d, Witnesses § 2.
[3, 9, 11] 5 Am Jur 2d, Appeal and Error § 783.
[4, 6, 7, 17, 18] 29 Am Jur 2d, Evidence § 180.
[5] 81 Am Jur 2d, Witnesses § 2.
[8] 23 Am Jur 2d, Depositions and Discovery §§ 314-323.
[12, 13] 63 Am Jur 2d, Prosecuting Attorneys § 27.
[13] 29 Am Jur 2d, Evidence § 225.
   41 Am Jur 2d, Indictments and Informations §§ 56, 60.
[14] 21 Am Jur 2d, Criminal Law § 328.
[15] 30 Am Jur 2d, Evidence §§ 1094, 1095.
[16] 29 Am Jur 2d, Evidence § 181.
[19] 30 Am Jur 2d, Evidence § 1172.
   81 Am Jur 2d, Witnesses § 2.
[20] 81 Am Jur 2d, Witnesses § 2.
[23] 81 Am Jur 2d, Witnesses §§ 560, 561.
[24] 81 Am Jur 2d, Witnesses § 480.
[25] 75 Am Jur 2d, Trial § 193.
[26] 40 Am Jur 2d, Homicide §§ 72, 474.
[27] 75 Am Jur 2d, Trial § 884.
[28] 40 Am Jur 2d, Homicide § 525.

present at the scene of the killing said that Collins was not present and that further investigation showed that Collins was at Selfridge Air Force Base at the time of the crime. The court denied the defendants' motion on the basis of the police officer's testimony. The court also found that even if Collins had been present he would have been an accomplice and, therefore, need not be indorsed as a res gestae witness. The Court of Appeals, D. E. Holbrook, Jr., and O'Hara, JJ. (V. J. Brennan, P.J., concurring in part) affirmed (Docket Nos. 20062, 20063). Defendants Pearson appeal, and raise several other issues which concern prosecutorial misconduct.

Willie Wynn was convicted by a jury in Recorder's Court of Detroit, John Patrick O'Brien, J., of assault with intent to do great bodily harm less than murder. The trial judge instructed the jury that they might infer that a res gestae witness, James Moore, that the people failed to produce at trial would have testified unfavorably to the people, if produced, although the trial judge found that the prosecution did not show due diligence in producing Moore and another witness whose production the judge had ordered at trial. The Court of Appeals, R. B. Burns, P.J., and T. M. Burns and R. M. Maher, JJ., reversed and remanded for a new trial (Docket No. 19808). The people appeal.

John J. Schwartz was convicted by a jury in Recorder's Court of Detroit, Thomas L. Poindexter, J., of delivering heroin. The Court of Appeals, R. B. Burns, P.J., and M. J. Kelly, J. (O'Hara, J., dissenting), reversed and remanded for a new trial on the ground that the people had failed to show due diligence in attempting to produce a res gestae witness indorsed on the information (Docket No. 18615). The people appeal. *Held:*

The convictions of the defendants Pearson are affirmed. The convictions of Wynn and Schwartz are reversed, subject to the prosecution's right to seek a post-remand hearing concerning the existence of prejudice within 30 days. If such a hearing is not sought, then the conviction shall be deemed vacated and the prosecution may commence a new trial.

1. Where there has been a hearing during the course of the trial concerning the prosecution's obligation to produce a res gestae witness and its diligence in the attempt, the defendant is not always able to raise the issues on appeal without first presenting them to the trial judge in a post-trial hearing. The purpose of a post-trial hearing concerning the non-production of a witness is twofold. It is not only to determine the reason for a failure to indorse or a failure to produce but also to determine whether the defendant has been prejudiced by non-

production of the witness. Where the trial judge has determined that the prosecution failed to exercise due diligence to produce a missing res gestae witness, the issues of the existence of prejudice and the appropriate remedy remain to be resolved, and should be raised in a post-trial hearing to perfect them for appeal. Where the trial judge has ruled that a missing witness is not a res gestae witness or that the prosecution was sufficiently diligent in its efforts to produce, a post-trial hearing would be superfluous and is not required prior to an appeal.

2. A defendant should be presumed to have been prejudiced by the prosecution's lack of due diligence unless the prosecution overcomes the presumption. However, use of the standard "possible", *i.e.,* the witness could not "possibly" have been produced or his testimony would have been of no "possible" assistance to the defendant, makes rebuttal of the presumption virtually impossible and is inappropriate. The "possible" standard could also be read as eliminating the "cumulative evidence" and "harmless error" exceptions to the res gestae rule.

3. The trial judge in *Schwartz* used the wrong standard ("good faith") in ruling on the prosecution's effort to locate and produce a res gestae witness. It is clear that the standard is one of due diligence and not good faith. The standard of due diligence was not met. It was clear that the witness was a res gestae witness who would have to be produced, and a diligent attempt would have included serious pretrial efforts to locate and subpoena him; no serious effort was made sufficiently in advance of trial to allow for the difficulties which occurred. Therefore Schwartz' conviction is vacated, subject to the prosecution's right to seek relief in a post-remand hearing.

4. In *Wynn,* the prosecution's witness testified that Wynn aimed a rifle and fired at Rudy Berry, and Wynn testified that the rifle accidentally discharged as he was raising it. The missing eyewitness Moore could not fairly be called the crucial eyewitness, but given that the only witnesses produced by the prosecution were friends or relatives of Berry, it is fair to conclude that Moore may have provided a different picture of the event. There was a lack of due diligence: an obvious res gestae witness was not indorsed, no pretrial efforts to subpoena him were made, and no serious attempt to comply with the prosecution's obligation was ever established. Consequently, Wynn's conviction is vacated, subject to the right of the prosecution to seek relief in a post-remand hearing. However, there is not a sufficient basis in the record to infer that the prosecution's lack of due diligence was purposeful. There is no record

support for the assumption that Moore's testimony would have been detrimental to the prosecution's case beyond the fact that he probably was not favorably disposed toward the Berry family, and indeed the defense was not interested in helping to locate him. Therefore, the defense should not be granted the many depositions and other discovery aids suggested by Justice Levin. Discovery is always available through traditional means.

5. Whether a defendant has been prejudiced by the prosecution's failure to exercise due diligence is a factual issue which should be resolved by the trial court; whether due diligence was employed and whether a person is a res gestae witness are similar factual issues. Accordingly, the following procedures provide a fair and effective resolution of the problems:

If the question of a missing res gestae witness is raised during the course of the trial, the court should hold a hearing and decide first whether the witness is in fact a res gestae witness; if the witness is determined to be a res gestae witness, production of the witness should be ordered; if the witness is not produced, a hearing should be had on the issue of due diligence.

a) If the trial judge finds a lack of due diligence, then the jury should be instructed that it may infer that the missing witness's testimony would be unfavorable to the prosecution's case. Determination of prejudice and possible remedies must await the verdict. If there is a verdict of guilty, then the defendant must raise the issue of prejudice and seek a remedy in a post-trial hearing or be foreclosed from raising these issues on appeal. If the defendant is dissatisfied with the results of the post-trial hearing, review may be sought in his appeal of right.

b) In cases where the missing witness is determined to be a res gestae witness but the court finds due diligence, or where it is determined that the witness is *not* a res gestae witness, the defendant may seek review of the issue on appeal without first bringing a post-trial motion.

c) In cases where the issue of a possible missing res gestae witness is not raised during the course of trial, it must be raised in a post-trial hearing to be perfected for appeal. The order of inquiry should be as follows:

1.) The court shall ascertain whether the claimed missing person is a res gestae witness;

2.) If so, the prosecutor shall produce the witness or explain why the witness cannot be produced and why the witness was not indorsed and produced at trial;

3.) If the witness is not produced, the court shall determine

whether the prosecution was duly diligent in its attempts to produce the witness;

4.) If a lack of due diligence is found or if the witness is produced, the court shall ascertain whether the defendant has been prejudiced by the failure to produce the witness at trial;

5.) If the defendant is found to be prejudiced the court shall fashion an appropriate remedy.

6. A new trial is not automatically warranted simply because the prosecution has failed to exercise due diligence in the production of a missing res gestae witness. The key issue in determining the proper remedy for the defendant when the prosecution has failed to fulfill its responsibilities is whether the defendant is prejudiced. At either a post-remand hearing or a post-trial hearing, the trial court should assess whether the defendant actually suffered any prejudice and fashion appropriate remedies. The burden should be on the prosecution to establish that its failure to exercise due diligence in the production of a res gestae witness did not adversely affect the defendant's right to a fair trial (i.e., the defendant is presumed prejudiced until the contrary is established). If the prosecution can establish that the missing testimony would have been of no assistance to the defendant, that it merely constitutes cumulative evidence, that its absence constitutes harmless error or that the witness could not have been produced at trial, then this burden has been met and the conviction should be affirmed. A failure to meet this burden should result in a new trial.

7. If it appears to the judge that there has been professional misconduct but that defendant's right to a fair trial has not been adversely affected, then the sanctions should rest upon the individual prosecutor rather than upon society. If professional misconduct also results in prejudice, the defendant should have his remedy and the code violation should be referred to the Attorney Grievance Commission for appropriate action. Although the state is ultimately responsible for the lack of due diligence in the production of res gestae witnesses, not all such failures are the result of prosecutorial negligence or misconduct. For example, it is arguable that the failure to produce the witness in *Schwartz* is more a result of the lack of diligence of the police officer than the prosecutor. There are many possible fact situations which would amount to a lack of due diligence and yet not rise to the level of professional misconduct proscribed by the Code of Professional Responsibility. The preferred course, however, would be for the trial judge to refer a

proper case to the Attorney Grievance Commission for investigation.

Justice Levin, joined by Chief Justice Kavanagh and Justice Williams, concurred in the dispositions of these cases. He wrote:

1. The underlying rationale of the rule which requires the prosecutor to indorse on the information, produce in court and call all known res gestae witnesses is that the prosecutor is obliged to present the whole transaction. The people's duty is not met where only such evidence as points toward guilt is produced when there exists other evidence which may suggest innocence.

2. The list of witnesses indorsed on the information is the only discovery available to the defendant as a matter of right. While the people argue that modern practice in Michigan is one of wide discovery, discovery is discretionary and discovery orders are the exception, not the rule. The people are in a better position than a defendant to identify and secure the production of witnesses. If the prosecution were relieved of the obligation to produce res gestae witnesses, defendants would call upon the court for assistance. Trials and justice would be delayed and additional costs would be incurred in providing indigent defendants with alternative and duplicative assistance in investigating the crime, and in identifying and locating witnesses and securing their attendance. Post-conviction claims that the prosecution withheld evidence, relatively rare in Michigan, would surely multiply as would post-conviction hearings to determine what the undisclosed witness might have said had he been produced. Allocation to the prosecution of the burden of investigation and production of all res gestae witnesses has served the people of this state and advanced the efficient and fair administration of criminal justice for more than a century.

3. The trial judge in *Pearson* erred in resolving whether the arrested Raymond Collins was at the scene on the hearsay assertions of the police officer, but there was no affirmative evidence that Collins, if there at all, was there other than as the third man who participated in the commission of the offenses; the only conclusion justified by the record is that if he was there he was an accomplice, and was not required to be produced. Accordingly, the judge's conclusion that the prosecutor was not obliged to produce Collins is sustained.

4. The only issue in *Wynn* was whether the shot was intentional or accidental. The people's witnesses were the complainant, relatives of the complainant, and the complainant's girlfriend. There was "bad blood" between the complainant's fam-

ily and defendant Wynn. James Moore and the third man who accompanied Wynn to the Berry home could have provided evidence regarding the purpose of the visit and Wynn's expressed intent. It is fair to conclude that Moore may have provided a different picture of the event than the witnesses produced by the prosecution. Manifestly, Moore and the third man were res gestae witnesses and the prosecutor was obliged to exert due diligence to produce them. The failure to produce Moore cannot be justified on the ground that he was an accomplice if for no other reason than because when the issue of his non-production was raised the prosecutor did not claim that he was an accomplice. Moore could have been produced, and the trial judge correctly found that there was no justification for the failure to do so. It was not open to the prosecutor, in lieu of complying with the rule requiring production of res gestae witnesses, to accept an instruction that the jury may infer that the missing witness would testify unfavorably to the people. A jury instruction on a permissible inference is not an adequate substitute for a live witness. Indeed, the instruction is intended for the case where, *despite due diligence,* the witness cannot be produced. A prosecutor does not have the option of calling a res gestae witness or of accepting an adverse jury instruction regarding a permissible inference. The order of the Court of Appeals reversing Wynn's conviction and remanding is affirmed. Because there is reason to believe that the prosecution's lack of due diligence was purposeful, before a post-remand hearing or a new trial, Wynn should have an opportunity to take the depositions of all officers and prosecutors who may have questioned Moore, and there should be produced any statements made by Moore and the records of such interviews. The prosecutor should exert his best efforts to produce Moore, and Wynn should be afforded an opportunity to take his deposition.

5. The positive burden to produce all res gestae witnesses is imposed upon the people to protect the defendant from false accusations and preserve his presumption of innocence. The obligation to produce res gestae witnesses is essentially derivative of a defendant's constitutional right to a fair trial and his right to demand prosecutorial proof of his guilt beyond a reasonable doubt. For these reasons "diligence" means devoted and painstaking application to accomplish an undertaking. The police officer in the *Schwartz* case was thus obliged to inquire of persons who might know the witness's whereabouts. He did not do so. Focusing on the officer's good faith was erroneous. The question is whether the prosecution exerted due diligence.

This was not a doubtful case that was resolved by the trial judge's exercise of discretion. The failure to make timely inquiry, and any inquiry of other persons living at the address, or of parents, neighbors, friends, or authorities who might have information about the witness's whereabouts, support the conclusion that the prosecution's efforts were inadequate.

6. In cases such as *Wynn* and *Schwartz* where, in the course of the trial, there was a hearing regarding the prosecution's failure to produce the witness and a finding that the efforts to produce him were insufficient, a defendant should be able to appeal without first seeking a post-trial hearing. However, if the Court of Appeals concludes that a witness should have been produced and the prosecutor's efforts were insufficient, the order for a new trial should be deemed conditioned by a right of the prosecutor to seek, within 30 days, a hearing to determine whether the defendant was prejudiced at trial by nonproduction of the witness. If the prosecutor establishes at such a hearing that the defendant was not so prejudiced because the witness could not possibly have been produced or because his testimony would have been of no possible assistance to the defendant, upon the trial judge's entry of an order so finding the defendant's conviction should be deemed affirmed. Otherwise, upon expiration of the 30 days without the prosecutor seeking such a hearing or upon entry of an order following such a hearing that the defendant was prejudiced, the conviction should be deemed vacated and the prosecutor allowed to proceed with a new trial. The Court of Appeals should be deemed to have retained jurisdiction for the purpose of reviewing a post-remand hearing record, including a statement by the judge of his findings and reasons for his decision, upon application by the prosecutor or defendant within 30 days of the entry of the judge's order. The Supreme Court does not address the question whether a prosecutor's failure to produce a witness may, in some circumstances, require or justify dismissal of the prosecution.

7. It does not appear that the Pearsons were deprived of a fair trial by the prosecuting attorney charging Willie Pearson's girlfriend with perjury and subpoenaing other witnesses. The girlfriend adhered at the trial to her testimony at the preliminary examination. Since the two witnesses were not subpoenaed or placed under bond until after they had testified at the Pearsons' trial, there is no reason to believe that their testimony was influenced by the prosecutor's decisions to charge the girlfriend or to subpoena or place them under bond. Nor is

there any reason to believe that but for those decisions the girlfriend would have changed her damaging testimony.

8. The Pearsons further contend that the innuendo of the prosecutor's questioning of Pearson's girlfriend was that she had earlier given inconsistent testimony which he improperly. reinforced by suggestively flipping through sheets of paper as he propounded questions. While the judge might have earlier stopped the prosecutor from pursuing this form of inquiry, the questions and answers dealt with a subsidiary issue and the Pearsons were not thereby prejudiced.

9. Nor is there merit in the contention that the prosecutor departed from the record in his summation. The prosecutor was within the bounds of permissible argumentative response in asking the jury to infer that the police and the prosecution knew that Raymond Collins was not the one who had killed the victim after defense counsel had argued that the victim's girlfriend, who was a witness for the prosecution, was untruthful because she had testified that Collins had killed the victim and his prosecution was later dismissed.

10. The judge instructed the jury on the defense's theory. After he completed his instructions he was asked to instruct that if the jurors concluded that the killing in one place was not a "continuation" of a robbery in another they could not convict of first-degree murder. The judge said that it would be inconsistent with defense counsel's request that the jury be instructed to convict of first-degree murder or acquit. There was no error.

11. The jury was instructed that the presumption of innocence attaches until "each and every one of you are satisfied beyond a reasonable doubt of each defendant's guilt". After the jury brought in its verdicts of guilty, defense counsel responded in the negative when asked whether there was anything further, and thus the jury was not polled. The Pearsons were not deprived of a fair trial by the judge's failure to instruct that the verdict must be unanimous.

12. While a recent decision requires an instruction on second-degree murder in a first-degree murder case without regard to whether the instruction is requested or declined, by its terms the rule of that case applies only to cases tried after January 1, 1976. The trial in the Pearson case concluded on February 25, 1974.

61 Mich App 366; 232 NW2d 408 (1975) affirmed.

60 Mich App 636; 231 NW2d 269 (1975) affirmed.

62 Mich App 188; 233 NW2d 517 (1975) affirmed.

Opinion of the Court

1. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION — EVIDENTIARY HEARING.

The purpose of a post-trial hearing concerning the non-production of a res gestae witness in a criminal trial is twofold; it is not only to determine the reason for a failure to indorse or a failure to produce but also to determine whether the defendant has been prejudiced by non-production of the witness.

2. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION — EVIDENTIARY HEARING.

The issues of the existence of prejudice to a defendant by the non-production of a res gestae witness in a criminal trial and the appropriate remedy should be raised in a post-trial hearing to perfect them for appeal where the trial judge has determined that the prosecution failed to exercise due diligence to produce the missing res gestae witness.

3. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION — EVIDENTIARY HEARING.

A post-trial hearing concerning the non-production of a witness in a criminal trial would be superfluous and is not required prior to an appeal where the trial judge has ruled that the missing witness is not a res gestae witness or that the prosecution was sufficiently diligent in its efforts to produce.

4. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION — PREJUDICE.

A defendant should be presumed to have been prejudiced by the prosecution's lack of due diligence in producing a res gestae witness unless the prosecution overcomes the presumption; however, use of the standard "possible", *i.e.*, the witness could not "possibly" have been produced or his testimony would have been of no "possible" assistance to the defendant, makes the rebuttal of the presumption virtually impossible, is inappropriate, and could also be read as eliminating the "cumulative evidence" and "harmless error" exceptions to the res gestae rule.

5. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION — DUE DILIGENCE.

The standard in ruling on the prosecution's effort to locate and produce a res gestae witness is one of due diligence and not good faith.

6. CRIMINAL LAW — RES GESTAE WITNESSES — INDORSEMENT —
   PRODUCTION.

   A defendant's conviction is vacated, subject to the prosecution's
   right to seek relief in a post-remand hearing, because the
   standard of due diligence in the prosecution's effort to locate.
   and produce a res gestae witness was not met where it was
   clear that the witness was one who would have to be produced,
   a diligent attempt would have included serious pretrial efforts
   to locate and subpoena him, and no serious effort was made
   sufficiently in advance of trial to allow for the difficulties which
   occurred.

7. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION — DUE
   DILIGENCE.

   There is not a sufficient basis in the record to infer that the
   prosecution's lack of due diligence in producing a res gestae
   witness was purposeful where there was no record support for
   the assumption that the witness's testimony would have been
   detrimental to the prosecution's case beyond the fact that he
   probably was not favorably disposed toward the family of the
   victim of crime charged, and indeed defense was not interested
   in helping to locate him; therefore the defense should not be
   granted extraordinary discovery aids concerning any state-
   ments the missing witness might have made to the police or
   prosecutors.

8. CRIMINAL LAW — DISCOVERY.

   Discovery through traditional means is always available to a
   criminal defendant.

9. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION — DUE
   DILIGENCE — EVIDENTIARY HEARING.

   Whether a defendant has been prejudiced by the prosecution's
   failure to exercise due diligence in producing a res gestae
   witness is a factual issue which should be resolved by the trial
   court while the testimony is fresh and available, not after the
   delays of the appellate process leave only a stale record and
   failing memories to be assessed by the trier of fact; whether
   due diligence was employed and whether a person is a res
   gestae witness are similar factual issues.

10. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION —
    EVIDENTIARY HEARING.

    The order of inquiry on a possible missing res gestae witness in a
    criminal trial where the issue is raised after trial should be 1)
    the court shall ascertain whether the claimed missing person is

a res gestae witness; 2) if so, the prosecutor shall produce the witness or explain why the witness cannot be produced and why the witness was not indorsed and produced at trial; 3) if the witness is not produced, the court shall determine whether the prosecution was duly diligent in its attempts to produce the witness; 4) if a lack of due diligence is found or if the witness is produced, the court shall ascertain whether the defendant has been prejudiced by the failure to produce the witness at trial; 5) if the defendant is found to be prejudiced the court shall fashion an appropriate remedy.

11. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION — DUE DILIGENCE — NEW TRIAL.

A new trial is not automatically warranted simply because the prosecution has failed to exercise due diligence in the production of a missing res gestae witness; the key issue in determining the proper remedy for the defendant where the prosecution has failed to fulfill its responsibilities is whether the defendant is prejudiced.

12. CRIMINAL LAW — NEW TRIAL — PROFESSIONAL MISCONDUCT.

A new trial in a criminal case should be awarded because of prejudicial error, whereas professional misconduct of a prosecutor should be remedied by the Attorney Grievance Commission; if professional misconduct also results in prejudice to the defendant's right to a fair trial, the defendant should have his remedy and the violation of the Code of Professional Conduct should be referred to the Attorney Grievance Commission for appropriate action.

DISSENTING OPINION BY LEVIN, J.

13. CRIMINAL LAW — RES GESTAE WITNESSES — INDORSEMENT — PRODUCTION.

*The underlying rationale of the rule which requires the prosecutor to indorse on the information, produce in court, and call all known res gestae witnesses is that the prosecutor is obliged to present the whole transaction; the people's duty is not met where only such evidence as points toward guilt is produced when there exists other evidence which may suggest innocence (MCL 767.40; MSA 28.980).*

14. CRIMINAL LAW — RES GESTAE WITNESSES — INDORSEMENT — PRODUCTION.

*The list of witnesses indorsed on the information is the only discovery available to the defendant as a matter of right, the*

*people are in a better position than a defendant to identify and secure the production of witnesses, and allocation to the prosecution of the burden of investigation and production of all res gestae witnesses has advanced the efficient and fair administration of criminal justice in this state for more than a century; therefore, the Supreme Court declines to change the rule requiring indorsement and production of all known res gestae witnesses to relieve the prosecution of the obligation in some instances (MCL 767.40; MSA 28.980).*

15. CRIMINAL LAW — RES GESTAE WITNESSES — INDORSEMENT — EVIDENCE — HEARSAY.

*Resolving whether a person was at the scene of a crime on a motion for indorsement of the person on the information as a res gestae witness by relying on the hearsay allegation of a police officer that the person was, in fact, elsewhere at the time of the crime is erroneous (MCL 767.40; MSA 28.980).*

16. CRIMINAL LAW — RES GESTAE WITNESSES — ACCOMPLICES.

*A prosecuting attorney was not obliged to produce as a res gestae witness a man who had been arrested and charged as having participated in an offense with two defendants but later dismissed where there was no affirmative evidence that, if the man had been at the scene of the offense at all, he was there as a mere observer or bystander, and the testimony was that a third man participated in the offense charge to have been committed by the defendants; the only conclusion justified is that if the man was there he was an accomplice of the two defendants and the prosecution was not obligated to produce him (MCL 767.40; MSA 28.980).*

17. CRIMINAL LAW — RES GESTAE WITNESSES — WORDS AND PHRASES.

*Two men who accompanied a defendant to the home of a complainant where the defendant allegedly assaulted the complainant with a rifle were res gestae witnesses and the prosecutor was obliged to exert due diligence to produce them where the only issue at trial was whether the defendant's shot at the victim was intentional or accidental; the people's witnesses were the complainant, relatives of the complainant, and a girlfriend of the complainant; there was "bad blood" between the complainant's family and the defendant; the two men who accompanied the defendant could have provided evidence of the purpose of the visit and the defendant's expressed intent; and one of them may have been the only person who had an unblocked view of the shooting (MCL 767.40; MSA 28.980).*

18. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION —
    INSTRUCTIONS TO JURY.

   *A prosecutor does not have the option of calling a res gestae
   witness or of accepting an adverse jury instruction that the
   jury may infer that the missing witness would testify unfavor-
   ably to the people; such a jury instruction is not an adequate
   substitute for a live witness, but is intended for the case where,
   despite due diligence, the witness cannot be produced.*

19. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION —
    DILIGENCE — WORDS AND PHRASES.

   *The obligation of the prosecutor to exercise diligent efforts to
   produce res gestae witnesses at trial is derivative of a defend-
   ant's constitutional right to a fair trial and his right to demand
   proof of his guilt beyond a reasonable doubt; therefore "dili-
   gence" means "devoted and painstaking application to accom-
   plish an undertaking".*

20. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION —
    DILIGENCE — WORDS AND PHRASES.

   *Failure of police to make timely inquiry of a res gestae witness's
   whereabouts, and any inquiry of other persons living at the
   witness's address, or of his parents, neighbors, friends, or
   authorities who might have information about his whereabouts
   support a conclusion that the prosecution's efforts to produce
   him were inadequate; in such a case it was error to focus the
   inquiry into prosecutorial diligence on the "good faith" of the
   efforts which were made by police.*

21. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION —
    DILIGENCE.

   *The prosecutor should have an opportunity, even in a case where
   the issue of his failure to produce a res gestae witness was
   preserved by objection at the trial, to show on post-trial motion
   that the defendant was not prejudiced by the failure to produce
   the witness; but to avoid undermining the long-established rule
   requiring indorsement of res gestae witnesses on the informa-
   tion and due diligence in producing them, the nature of the
   inquiry in such a hearing upon remand from an appeal is
   limited to whether the defendant suffered prejudice, not
   whether the missing witness's testimony may at a subsequent
   trial bring about a different result.*

22. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION —
    DILIGENCE — NEW TRIAL.

   *A defendant was not prejudiced at trial and a new trial is not
   required for failure by the prosecutor to produce a res gestae*

witness at the first trial where the prosecutor establishes, at the first trial or at a hearing after trial upon remand from an appeal, that the witness could not possibly have been produced at the trial or his testimony would have been of no possible assistance to the defendant; the consideration of any other evidence adduced by the parties at trial on this question should be limited to its nature and should not extend to the jury questions of its quality or weight in relation or comparison to the missing witness's testimony.

23. CRIMINAL LAW — WITNESSES — INTIMIDATION — FAIR TRIAL.

Defendants charged with first-degree murder were not deprived of a fair trial because of the prosecutor's actions in charging one defendant's girlfriend with perjury and subpoenaing and placing under bond for her perjury trial two res gestae witnesses after they testified at the defendants' trial where the girlfriend did not change the exculpatory testimony she had given at the defendants' preliminary examination, there was no reason to believe that the testimony of the two witnesses was influenced by the prosecutor's actions, and there was no reason to believe that but for those actions the girlfriend of the defendants' victim would have changed her damaging testimony given at the preliminary examination.

24. CRIMINAL LAW — WITNESSES — PROSECUTORIAL MISCONDUCT — FAIR TRIAL.

Defendants charged with murder were not prejudiced by the innuendo of the prosecutor in questioning a witness that she had earlier given inconsistent testimony which he improperly reinforced by suggestively flipping through sheets of paper as he asked questions where, although the trial judge might earlier have stopped the prosecutor from pursuing this form of inquiry, the questions and answers dealt with a subsidiary issue.

25. CRIMINAL LAW — ARGUMENT OF COUNSEL — IMPROPER REMARKS.

A prosecutor was within the bounds of permissible argumentative response in asking the jury to infer that the fact that criminal charges were dropped against a man who the defense claimed had participated in the crime with two defendants showed that the police and prosecution knew he was not the third man after defense counsel had argued that the dropping of the charges showed that the prosecution did not believe their own witness, who had testified against the third man at his preliminary examination.

26. HOMICIDE — FIRST-DEGREE MURDER — INSTRUCTIONS TO JURY.

> Refusal of a request by defendants charged with first-degree murder in the commission of a robbery for an instruction to the jury that if they concluded that the killing in one place was not a "continuation" of a robbery in another they could not convict the defendants of first-degree murder was not erroneous where the request was made after the trial court completed its instructions to the jury on the defendant's theory that another man killed the victim and the requested instruction would necessitate instructions on the lesser degrees of murder which would have been inconsistent with defense counsel's previous request that the jury be instructed to convict the defendants of first-degree murder or to acquit them (MCL 750.316; MSA 28.548).

27. CRIMINAL LAW — INSTRUCTIONS TO JURY — UNANIMOUS VERDICT.

> Defendants were not deprived of a fair trial by the judge's failure to instruct the jury that the verdict must be unanimous where the jury was instructed that the presumption of innocence attaches until "each and every one of you are satisfied beyond a reasonable doubt of each defendant's guilt" and defense counsel did not request that the jury be polled after the verdicts of guilty were announced.

28. HOMICIDE — FIRST-DEGREE MURDER — SECOND-DEGREE MURDER — INSTRUCTIONS TO JURY — COMMON LAW — PRECEDENT.

> The decision which requires an instruction to the jury on second-degree murder in a first-degree murder case without regard to whether the instruction is requested or declined applies by its terms only to cases tried after January 1, 1976.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William L. Cahalan,* Prosecuting Attorney, for the people.

*Edward Reilly Wilson,* Research, Training & Appeals, and *Raymond P. Walsh,* Assistant Prosecuting Attorney, for the people in *Pearson.*

*Stephen H. Boak* and *Raymond P. Walsh,* Assistants Prosecuting Attorney, for the people in *Wynn.*

*Edward Reilly Wilson,* Research, Training & Appeals, and *Maura D. Corrigan,* Assistant Prosecuting Attorney, for the people in *Schwartz.*

*Carl Ziemba* for defendants Pearson.

*Leonard Townsend* for defendant Wynn.

*Theodore B. Sallen* (by *Alvin C. Sallen)* for defendant Schwartz.

COLEMAN, J. We agree that the convictions of Willie and Lindsay Pearson should be affirmed. We also concur in the result that the convictions of Willie Wynn and John J. Schwartz should be reversed. In *Schwartz,* reversal is required because the prosecutor failed to exercise sufficient diligence in his attempts to produce Don Cager (one of two on-the-scene witnesses), regardless of the "good faith" on the part of the prosecution. Reversal in *Wynn* is predicated upon the prosecution's lack of diligence in attempting to produce Moore and its apparent disregard for its responsibility to present to the judge and jury the "whole transaction" of the alleged crime.

A separate opinion is necessary, however, to set forth the points of departure from Justice LEVIN's opinion. We do not agree that in all cases where there has been a hearing during the course of trial concerning the prosecution's obligation to produce a given res gestae witness and its diligence in the attempt, the defendant should be able to raise missing res gestae witness issues on appeal without first presenting them to the trial judge in a *Robinson* (post-trial) hearing.[1] As Justice LEVIN notes: "The purpose of a *Robinson* hearing, however, is twofold. It is not only to determine the

[1] *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973).

reason for a failure to indorse or a failure to produce but also to determine whether the defendant has been prejudiced by non-production of the witness."

In cases where the trial judge has determined that the prosecution failed to exercise due diligence when attempting to produce a missing res gestae witness *(e.g., Wynn)*, the issues of the existence of prejudice (if any) and the appropriate remedy remain to be resolved. These issues should be raised in a post-trial hearing in order to perfect them for appeal. In cases where the trial court has ruled that a missing witness is not a res gestae witness or that the prosecution was sufficiently diligent in its efforts to produce *(e.g., Schwartz)*, a *Robinson* hearing would be superfluous and is not required prior to an appeal.

Furthermore, we are unable to accept our brother's standards for determining whether a defendant has been prejudiced by the prosecution's lack of due diligence.[2] While we agree that the defendant should be presumed prejudiced unless and until the prosecution overcomes this presumption, utilization of the standard "possible" *(i.e.,* the witness could not "possibly" have been produced or his testimony would have been of no "possible" assistance to defendant) makes rebuttal of the presumption virtually impossible. Also, it could be read as eliminating the "cumulative evidence" and "harmless error" exceptions to the res gestae rule. Therefore, in *Wynn* and *Schwartz,* post-remand

---

[2] Justice LEVIN focuses on the standard a prosecutor would have to meet to rebut a presumption of prejudice. He says:

"If the prosecutor establishes at such a post-remand hearing that the defendant was not so prejudiced because the witness could not *possibly* have been produced or because his testimony would have been of no *possible* assistance to the defendant, upon the trial judge's entry of an order so finding the defendant's conviction shall be deemed affirmed." (Emphasis added.)

hearings and *Robinson* hearings, the determination of the existence of prejudice to the defendant as a result of a violation of the prosecution's obligation to indorse, produce and call all known res gestae witnesses should be in accordance with the standards delineated *infra.*

I

John J. Schwartz was convicted of delivery of heroin. MCL 335.341(1)(a); MSA 18.1070(41)(1)(a). The testimony establishes that the defendant delivered heroin to a police officer who had been introduced to the defendant by Don Cager, an informant. Cager was present during the transaction, but was not produced at trial. Consequently, Cager was clearly a missing res gestae witness. He was indorsed on the information. The defense was entrapment.

During the course of the trial, the defendant raised the issue of non-production. The prosecution recalled the police officer who had worked with Cager. The officer testified that the last time he had seen Cager was about six months prior to trial. In the interim, and particularly over the five weeks preceding trial, he had made several unsuccessful (vaguely described) attempts to find Cager regarding other matters. In preparation for the *Schwartz* trial (which was to begin the next day), the officer went to Cager's residence in Algonac, Michigan, spoke to several people on the street in Cager's age group, and spoke to a local police officer. He was unsuccessful in locating Cager. On the morning that he was recalled to the witness stand, the same officer had been sent out in search of Cager armed with a subpoena. The officer returned to Algonac and checked Cager's residence, a boathouse, a firehouse, a pool hall, two bars and

two restaurants. The court ruled that these efforts constituted a "good faith" attempt to locate and produce Cager.

The Court of Appeals reversed on the grounds that the trial judge used the wrong standard (good faith versus due diligence) and that the prosecution did not exercise sufficient diligence in its attempts to produce Cager. 62 Mich App 188; 233 NW2d 517 (1975). We agree.

It is clear that the standard is one of due diligence and not good faith.[3] We also believe that the standard of due diligence was not met. Prior to trial there was no attempt to subpoena Cager, nor did anyone keep track of his whereabouts between defendant's arrest and trial. It was clear that Cager was a res gestae witness who would have to be produced. Consequently, a diligent attempt would have included serious pretrial efforts to locate and subpoena Cager.

We must agree with Justice LEVIN's assessment of the police officer's efforts during the two trips to Algonac. A thoughtful, serious attempt, even at that late date, would have included prior telephone inquiries (particularly in the evening) to Cager's residence, his parents, the local police, an inquiry of neighbors, etc. Of particular concern to this Court, however, is that no serious effort was made sufficiently in advance of trial to allow for the difficulties which occurred. Therefore, we agree that the defendant's conviction be vacated, but subject to the prosecution's right to seek relief in a post-remand hearing consistent with the procedures and standards set forth *infra.*

---

[3] The good faith or bad faith of the prosecution is simply irrelevant when deciding whether the prosecution has fulfilled its obligation to present the "whole transaction" of an alleged crime. Due diligence is the standard. Good faith-bad faith becomes relevant when prejudice and professional misconduct are considered.

## II

Willie Wynn was convicted of assault with intent to do great bodily harm less than murder. MCL 750.84; MSA 28.279. The testimony establishes that Earl Berry had beaten Wynn's ex-girlfriend and threatened Wynn. James Moore (the girlfriend's brother), Wynn and an unknown third person went to the Berry family's home in an alleged attempt to straighten out matters and pacify Earl Berry. A rifle was brought along.

Moore entered the Berry house first. Earl Berry was not home so Moore spoke to Floyd and Armstead "Rudy" Berry (Earl's brothers) in a back bedroom. A few minutes later Wynn ran in the house with the rifle and a shot was fired, narrowly missing Rudy Berry.

Wynn was charged with assault with intent to commit murder. The key element of the proofs was Wynn's intent. Wynn testified that he entered the house with the rifle, that he saw Rudy Berry coming toward him, that he ordered Rudy to halt while raising the rifle and that the rifle *accidently* discharged. The prosecution's witnesses testified that Wynn *aimed and fired* at Rudy. All parties agree that Moore was an eyewitness to the incident.

We cannot agree, however, with Justice LEVIN's characterization of the importance of Moore's testimony. It is stated:

"Moore was standing about two feet in front of and to the side of the complainant when the shot was fired, and may have been the only person who had an unblocked view of the incident."

Rudy Berry testified that Moore preceded him out of a back bedroom as Wynn ran in the front

door with a rifle in his hands. Rudy Berry said that when he and Wynn saw each other they both stopped still and Wynn then aimed at him from a distance of 7 or 8 feet. Berry then said:

"*Q.* What happened then?

"*A.* He pulled the trigger, you know, and as he fired, you know, I ducked, you know, I seen he fired and I ducked the bullet, and *after he fired it,* I grabbed James Moore.

"*Q.* Okay, where was James Moore standing?

"*A.* He was standing about two feet in front of me *to the left, next to the wall,* so all I had to do was jump out and grab him, so I grabbed him, because if he shot again I wanted him to hit James Moore instead of me since they were together." (Emphasis added.)

We understand this and other testimony to place Moore to one side of Rudy Berry when the shot was fired. Because the defendant's intent was the key issue, his actions before the shot were of paramount importance. Further, the evidence establishes that Floyd Berry and Doris Smith also had unobstructed views of the entire transaction. Floyd Berry, Doris Smith and Rudy Berry were produced and called by the prosecution.

Thus, we do not believe it is fair to depict Moore as the crucial eyewitness. However, given that the only witnesses produced by the prosecution were friends or relatives of the Berrys, it is fair to conclude that Moore may have provided a different picture of the event.

Moore was not indorsed prior to trial, but in response to a defense motion the court ordered Moore indorsed and produced during trial. The police located Moore and he said he would appear. No attempt to serve a subpoena was ever made. Moore did not come to court and the prosecution

made no further efforts to produce him. The court found that this constituted a lack of due diligence and instructed the jury that it could infer Moore's testimony would have been unfavorable to the prosecution.

The Court of Appeals reversed. 60 Mich App 636; 231 NW2d 269 (1975). We agree that there was a lack of due diligence. Of particular concern is the fact that an obvious res gestae witness was not indorsed, no pretrial efforts to subpoena him were made and no serious attempt to comply with the prosecution's obligations in this regard was ever established. Consequently, the defendant's conviction should be vacated, subject to the prosecution's right to seek relief in a post-remand hearing consistent with the procedures and standards set forth later in this opinion.

We do not read the record to suggest that Moore's testimony was intentionally withheld. Although the prosecutor may have appeared recalcitrant and less than diligent in his efforts to produce Moore, we still find an insufficient basis to infer "that the prosecution's lack of due diligence was purposeful". To the contrary, there is no record support for the assumption that Moore's testimony would have been detrimental to the prosecution's case beyond the fact that Moore probably was not favorably disposed toward the Berry family. Indeed, the defense was not interested in helping to locate Moore on the basis that he would testify against Wynn.

Therefore, we would not grant the defense the many depositions and other discovery aids provided by Justice LEVIN. Discovery is always available through traditional means.

### III

Central to the judicious and efficient administra-

tion of criminal justice are procedures allowing the trial court to decide all the issues necessary to dispose of a case prior to appeal, whenever possible. Moreover, factual questions should be resolved while the testimony is fresh and available, not after the delays of the appellate process leave only a stale record and failing memories to be assessed by the trier of fact. Whether a defendant has been prejudiced by the prosecution's failure to exercise due diligence is a factual issue which should be resolved by the trial court. Whether due diligence was employed and whether a person, in fact, is a res gestae witness are similar factual issues.

It is our opinion that the following procedures provide a fair and effective resolution of these problems without repeatedly traveling up and down the judicial ladder.

If the question of a missing res gestae witness is raised during the course of trial, it is our opinion that the court should hold a hearing and decide first whether the witness is in fact a res gestae witness.[4] If it is determined that the person is a res gestae witness, the court should order the prosecution to produce him or her.[5] If the witness is not produced, then the court should hold a hearing on the issue of whether the prosecution was duly diligent in its attempts to produce the witness.[6]

---

[4] To prevent a repetition of evidence, this hearing should be held at the close of the prosecution's proofs in most cases. However, the exact point during trial when this hearing and the hearing on due diligence (if necessary) are to be held should be within the trial court's discretion.

[5] The court may want to consider a continuance to allow the prosecution time to produce the witness, particularly when the witness was unknown to the prosecution prior to trial. Clearly, it is preferable that this testimony be presented to the jury whenever possible.

[6] Footnote 6 on next page.

Assuming the trial judge decides that there was a lack of due diligence, as in *Wynn,* then the judge should instruct the jury that it may infer that the missing "witness's testimony would have been unfavorable to the prosecutor's case". CJI 5:2:14(3). However, determination of the existence of prejudice to the defendant and possible remedies must await the verdict. Assuming a verdict of guilty, the defendant must raise the issue of prejudice and seek a remedy in a *Robinson*-type procedure or be foreclosed from raising these issues on appeal. If the defendant is dissatisfied with the results of the *Robinson* hearing, review may be sought in the defendant's appeal as of right.

In cases like *Schwartz,* where the missing person is determined to be a res gestae witness but the court finds the attempts to produce sufficiently diligent, there is no purpose in forcing the defendant first to seek a remedy in a *Robinson* proceeding. The defendant may seek a review of the court's ruling on the due diligence issue in an appeal without first bringing a post-trial motion. Identical procedures should be followed when the issue of a missing witness is raised at trial, but the court determines the person is *not* a res gestae witness.

The third type of case is the typical *Robinson* scenario. There, the issue of a possible missing res gestae witness is not raised during the course of

[6] Standard Criminal Jury Instruction 5:2:14 allows the judge to submit the issue of due diligence to the jury. We believe that this procedure should not be utilized. Such a determination is essential to resolve cases where the missing witness is a res gestae witness and there is a guilty verdict. Because the jury would not ordinarily disclose its decision on the issue, we believe that the court must hold the hearing, make a record and state its determination of the issue so that the parties and the court may know whether due diligence was exercised and the reasons for this finding.

trial. We would still require the issues to be raised in a *Robinson* hearing in order to perfect them for appeal. However, we would refine the procedure to require that the trial court reach all the issues necessary to dispose of the case. In summary, and consistent with our earlier analysis, the order of inquiry should be as follows:

1. The court shall ascertain whether the claimed missing person is a res gestae witness;

2. If so, the prosecutor shall produce the witness or explain why the witness cannot be produced and why the witness was not indorsed and produced at trial;

3. If the witness is not produced, the court shall determine whether the prosecution was duly diligent in its attempts to produce the witness;

4. If a lack of due diligence is found or if the witness is produced, the court shall ascertain whether the defendant has been prejudiced by the failure to produce the witness at trial;

5. If the defendant is found to be prejudiced the court shall fashion an appropriate remedy.

Except in cases where the court finds in favor of the prosecution on the issues of whether a person is a missing res gestae witness or whether due diligence was exercised, these procedures will make it more likely that the missing witness ultimately will be produced and result in a maximum of one appeal, removing the need for a remand and continuing appellate jurisdiction. In the *Schwartz* type of case, if the defendant is successful on appeal a new trial should be conditioned upon the prosecutor's right to establish a lack of prejudice. Consequently, we would hold that in *Wynn, Schwartz,* and future similar cases the prosecutor shall have 30 days to seek a hearing to determine the existence of prejudice. The

Court of Appeals shall be deemed to have retained jurisdiction to review the hearing record upon application of either party within 30 days of the entry of the judge's order. Should the prosecutor fail to seek a post-remand hearing, within 30 days, the conviction shall be deemed vacated and the prosecutor may proceed with a new trial.

## IV

A new trial is not automatically warranted simply because the prosecution has failed to exercise due diligence in the production of a missing res gestae witness. The key issue in determining the proper remedy for the defendant when the prosecution has failed to fulfill its responsibilities is whether the defendant is prejudiced. Our area of disagreement with Justice Levin primarily resides in the standards for determining the existence of prejudice.

In effect, his approach rebuttably presumes that the defendant was prejudiced upon a finding of a lack of due diligence. This presumption could be rebutted only "[i]f the prosecutor establishes that the witness could not *possibly* have been produced at the trial or his testimony would have been of no *possible* assistance to the defendant * * * ." (Emphasis added.) Moreover, it is stated that: "If the witness cannot be produced for a post-remand hearing (unless the prosecutor establishes further that the witness could not possibly have been produced at the trial), the conviction must be reversed because there is no way of knowing whether at the trial he might possibly have given testimony of assistance to the defendant." The motivation for fashioning such restrictive standards appears to be that they will discourage

prosecutorial failure to employ due diligence. Unfortunately, these standards will also result in many unnecessary new trials.

Such an approach confuses two concepts. New trials should be awarded because of prejudicial error, whereas professional misconduct should be remedied by the Attorney Grievance Commission *(e.g.,* deliberate withholding of res gestae testimony favorable to the defendant).

At either a post-remand hearing or a *Robinson* hearing, we would have the trial court assess whether the defendant actually suffered any prejudice and fashion appropriate remedies. The burden should be on the prosecution to establish that its failure to exercise due diligence in the production of a res gestae witness did not adversely affect the defendant's right to a fair trial *(i.e.,* the defendant is presumed prejudiced until the contrary is established). If the prosecution can establish that the missing testimony would have been of no assistance to the defendant, that it merely constitutes cumulative evidence,[7] that its absence constitutes harmless error[8] or that the witness could not have been produced at trial, then this burden has been met and the conviction should be affirmed. A

---

[7] For discussion of the cumulative evidence rule see, *e.g., People v Raider,* 256 Mich 131, 134; 239 NW 387 (1931), *People v Bartlett,* 312 Mich 648, 654-655; 20 NW2d 758 (1945), *People v Cooper,* 326 Mich 514, 523; 40 NW2d 708 (1950), *People v Reynold,* 20 Mich App 397, 399; 174 NW2d 25 (1969), *People v Harrison,* 44 Mich App 578, 588-590; 205 NW2d 900 (1973), *People v Sims,* 62 Mich App 550, 554-555; 233 NW2d 645 (1975), *People v Saunders,* 68 Mich App 546; 243 NW2d 679 (1976).

[8] For discussion of the harmless error rule see, *e.g., Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967), *People v Shirk,* 383 Mich 180, 195-197; 174 NW2d 772 (1970), *People v Robinson,* 386 Mich 551, 560-564; 194 NW2d 709 (1972), *People v Mobley,* 390 Mich 57, 65-66; 210 NW2d 327 (1973), *People v Wichman,* 15 Mich App 110; 166 NW2d 298 (1968), *People v Swan,* 56 Mich App 22, 30-35; 223 NW2d 346 (1974), *People v Hadley,* 67 Mich App 688; 242 NW2d 32 (1976). See, generally, Saltzburg, *The Harm of Harmless Error,* 59 Va L Rev 988 (1973).

failure to meet this burden should result in a new trial.

V

In summary, the procedures delineated in Part III of this opinion provide a means for judiciously and efficiently disposing of missing res gestae witness issues. Emphasis is placed upon disposition of issues prior to appeal in order to avoid post-remand hearings and continuing appellate jurisdiction.

We prefer a less extreme standard than that chosen by Justice LEVIN for determining whether a defendant has been prejudiced by the prosecution's lack of due diligence in attempting to produce res gestae witnesses.

If it appears to the judge that there has been professional misconduct but that defendant's right to a fair trial has not been adversely affected, then the sanctions should rest upon the individual prosecutor rather than upon society. If professional misconduct also results in prejudice, the defendant should have his remedy and the code violation should be referred to the Grievance Commission for appropriate action.[9]

However, it is worth noting that although the state is ultimately responsible for the lack of due diligence in the production of res gestae witnesses, not all such failures are the result of prosecutorial negligence or misconduct. For example, it is arguable that the failure to produce Cager in *Schwartz* is more a result of the lack of diligence of the police officer than the prosecutor. There are many

---

[9] It is clear that the Disciplinary Rules encompass and proscribe prosecutorial misconduct. *E.g.,* Code of Professional Responsibility, DR 7-103; DR 7-109, subds (A), (B); DR 7-106, subds (A), (C)(7); DR 7-102, subds (A)(1), (A)(3), (A)(6)-(A)(8); DR 1-102.

possible fact situations which would amount to a lack of due diligence and yet not rise to the level of professional misconduct proscribed by the Code of Professional Responsibility. The preferred course, however, would be for the trial judge to refer a proper case to the Grievance Commission for investigation.

We affirm in *Pearson.* In *Wynn* and *Schwartz,* we reverse subject to the prosecution's right to seek a post-remand hearing, concerning the existence of prejudice, within 30 days from the issuance of this opinion. Should the prosecutor seek such a hearing in either case, within 30 days from the entry of the judge's order either party may seek review of the hearing from the Court of Appeals. The Court of Appeals shall be deemed to have continuing jurisdiction for the purpose of reviewing such hearings. If the prosecutor does not seek a post-remand hearing within 30 days, then the conviction(s) shall be deemed vacated and the prosecutor may commence a new trial.

FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with COLEMAN, J.

LEVIN, J. *(dissenting).* It was claimed by the defense at trial in each of these consolidated cases that the prosecution had failed to produce a res gestae witness.

We agree, in each case, with the Court of Appeals: in *Pearson* the prosecution was not obliged to produce the witness, and in *Wynn* and *Schwartz* it was so obliged and did not exert sufficient efforts to produce him.

In *Pearson* there are other issues which we address in Part VII, *infra.* We affirm the Pearsons' convictions.

The Court of Appeals reversed the convictions of Wynn and Schwartz and remanded for new trials.

The principal issue presented is whether there must be a post-trial hearing, such as was required in *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), in cases such as *Wynn* and *Schwartz* where, in the course of the trial, there was à hearing regarding the prosecution's failure to produce the witness and a finding, at trial or on appeal, that the efforts to produce him were insufficient.

We agree with the Court of Appeals that where there has been such a hearing and finding a defendant may appeal without first seeking a *Robinson* hearing. We would hold, however, that if the Court of Appeals concludes that a witness should have been produced and the prosecutor's efforts were insufficient, the order for a new trial shall be deemed conditioned by a right of the prosecutor to seek, within 30 days, a hearing to determine whether the defendant was prejudiced at trial by non-production of the witness. If the prosecutor establishes at such a post-remand hearing that the defendant was not so prejudiced because the witness could not possibly have been produced or because his testimony would have been of no possible assistance to the defendant, upon the trial judge's entry of an order so finding the defendant's conviction shall be deemed affirmed. Otherwise, upon expiration of the 30 days without the prosecutor seeking such a hearing or upon entry of an order following such a hearing that the defendant was prejudiced, the conviction shall be deemed vacated and the prosecutor may proceed with a new trial. The Court of Appeals should be deemed to have retained jurisdiction for the purpose of reviewing a post-remand hearing record, which shall include a statement by the judge of his findings and reasons for his decision, upon applica-

tion by the prosecutor or defendant within 30 days of the entry of the judge's order.

We do not address the question, suggested in our consideration of *Wynn* and *Schwartz* but not briefed or argued, of whether a prosecutor's failure to produce a witness may, in some circumstances, require or justify dismissal of the prosecution.

## I

The prosecution contends that "[t]he res gestae rule, couched in modern due process, compulsory process, discovery and pre-trial motions and depositions, has merged and no reason calls for its continuance and expensive redundancy".

It appears from an early Michigan case that the rule is derived from the English practice.[1] The rule took legislative form in 1859;[2] the statute now provides:

"All informations shall be filed in the court having jurisdiction of the offense specified therein, after the proper return is filed by the examining magistrate, by the prosecuting attorney of the county as informant; *he shall indorse thereon the names of the witnesses known to him at the time of filing the same.* The information shall be subscribed by the prosecuting attorney or in his name by an assistant prosecuting attorney. Names of additional witnesses may be indorsed before or during the trial by leave of the court and upon such conditions as the court shall determine." MCL 767.40; MSA 28.980 (emphasis supplied).

---

[1] *Hurd v People,* 25 Mich 405, 416 (1872).

[2] 1859 PA 138, § 2; 1871 CL 7938; How Stat 9549; 1897 CL 11934; 1915 CL 15761.

1859 PA 138 authorizes criminal prosecution upon an information the same as upon indictment.

The indictment statute has a similar requirement of indorsement. MCL 767.25; MSA 28.965. See, also, *Hill v People,* 26 Mich 496 (1873).

The relevant language has remained unchanged since first enacted.[3] The statute has been consistently construed by this Court to require the prosecutor to indorse on the information, produce in court and call all known res gestae witnesses.[4]

The underlying rationale is that the prosecutor's obligation is to present the "whole transaction":

"But the prosecution can never, in a criminal case, properly claim a conviction upon evidence which, expressly or by implication, shows but a part of the *res gestae,* or whole transaction, if it appear that the evidence of the rest of the transaction is attainable. This would be to deprive the defendant of the benefit of the presumption of innocence, and to throw upon him the burden of proving his innocence. It is the *res gestae,* or whole transaction, the burden of proving which rests upon the prosecution (so far at least as the evidence is attainable). It is that which constitutes the prosecutor's case, and as to which, the defendant has the right of cross-examination; it is that, which the jury are entitled to have before them, and, 'until this is shown, it is difficult to see how any legitimate inference of guilt, or of the degree of the offense, can be drawn.' " *Hurd v People,* 25 Mich 405, 415 (1872).[5]

[3] Other portions of the statute have been amended. 1927 PA 175, ch VII, § 40; 1929 PA 24, ch VII, § 40; 1955 PA 184, § 1; 1961 PA 11, § 1.

[4] See, *e.g., Maher v People,* 10 Mich 212, 225-226 (1862); *Hurd v People,* 25 Mich 405 (1872); *Wellar v People,* 30 Mich 16, 22-24 (1874); *People v Price,* 74 Mich 37, 41; 41 NW 853 (1889); *People v Swetland,* 77 Mich 53, 57-59; 43 NW 779 (1889); *People v Howes,* 81 Mich 396, 400-401; 45 NW 961 (1890); *People v Deitz,* 86 Mich 419, 427-432; 49 NW 296 (1891); *People v Germaine,* 101 Mich 485, 486-488; 60 NW 44 (1894); *People v Vick,* 235 Mich 475, 480; 209 NW 584 (1926); *People v Raider,* 256 Mich 131, 134-137; 239 NW 387 (1931); *People v Kayne,* 268 Mich 186, 189-195; 255 NW 758 (1934); *People v Zabijak,* 285 Mich 164, 169-173; 280 NW 149 (1938); *People v Connor,* 295 Mich 1, 5; 294 NW 74 (1940); *People v Serra,* 301 Mich 124, 129-131; 3 NW2d 35 (1942); *People v Bartlett,* 312 Mich 648, 654-655; 20 NW2d 758 (1945); *People v Tann,* 326 Mich 361, 366-367; 40 NW2d 184 (1949).

Only res gestae witnesses are required to be indorsed, produced and called. If a non-res gestae witness is indorsed, the prosecutor is obliged to have him in court, but there is no duty to call him. See *People v Grant,* 111 Mich 346; 69 NW 647 (1896); *People v Lummis,* 260 Mich 170; 244 NW 438 (1932); *People v Zabijak, supra.*

[5] See, also, *Maher v People, supra; Patten v People,* 18 Mich 314

"Its roots are in this Court's historic concern that when the full investigative and prosecutorial power of the state is arrayed against an accused in a criminal case, the people's duty is not met where only such evidence as points toward guilt is produced when there exists other evidence which may suggest innocence. It is a product of judicial policy that the prosecutor may not pick and choose which witnesses will fairly present the whole picture, but requires the production of all witnesses to an alleged crime, leaving it to the trier of fact to decide whether in the totality guilt is proven." *State Bar Grievance Administrator v Jaques*, 401 Mich 516, 533-534; 258 NW2d 443 (1977).

The list of witnesses indorsed on the information is the only discovery available to the defendant as a matter of right. While the people argue that "[m]odern practice in Michigan is one of wide discovery", discovery is discretionary[6] and discovery orders are the exception, not the rule.

The people are in a better position than a defendant to identify and secure the production of witnesses. Few defendants have a staff of investigators to assist them. The police generally receive cooperation from citizens and also have the sup-

---

(1869); *Wellar v People, supra; People v Deitz, supra; People v Raider, supra; People v Tann, supra.*

[6] Discovery is discretionary with the trial judge. See *People v Johnson,* 356 Mich 619; 97 NW2d 739 (1959); *People v McIntosh,* 400 Mich 1; 252 NW2d 779 (1977); see, also, RCR 21. Changing the res gestae rule would leave defendants who draw a judge who does not generally grant discovery with virtually no discovery.

The prosecutor states: "Under Recorder's Court Rule 21.2 a defendant may discover virtually anything material to the defense." The rule states:

"Upon motion of a defendant at any time after the filing of the information and upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable, the court *may* order the prosecution to permit the defendant to inspect and copy or photograph *designated* papers, documents, transcriptions, recordings or tangible objects in the possession of the prosecution or the police *and not intended* to be introduced or used by the prosecution at the trial." RCR 21, § 2 (emphasis supplied).

port of other law enforcement agencies in identifying and locating witnesses. A police investigation may continue to the time of trial. A thorough investigation may develop the identity of witnesses otherwise unknown to the defendant.

Police officers serve and enforce process for the prosecutor.[7] A witness who might not respond to a subpoena delivered by a private process server may appear when a uniformed officer serves the process; service by an officer is a reminder of the authority of the law and strongly conveys to the witness the obligation to appear and that there may be adverse consequences if he does not.

If the prosecution were relieved of the obligation to produce res gestae witnesses, defendants would call upon the court for assistance. They would, if indigent, and most defendants are, seek investigators and other assistance to identify and locate witnesses and to serve and enforce process. Adjournments of trials would be sought because of real and fancied difficulties in obtaining the attendance of witnesses. Trials and justice would be delayed and additional costs would be incurred in providing indigent defendants with alternative and duplicative assistance in investigating the crime, and in identifying and locating witnesses and securing their attendance. Post-conviction claims that the prosecution withheld evidence, relatively rare in Michigan, would surely multiply, as would post-conviction *Robinson* hearings to determine what the undisclosed witness might have said had he been produced.

Allocation to the prosecution of the burden of investigation and production of witnesses has

---

[7] RCR 22 provides that "service of witness subpoenas" shall be "made by the Detroit Police Department on behalf of *indigent* defendants." (Emphasis supplied.) There is no comparable general court rule.

served the people of this state well for more than
a century.[8] The efficient and fair administration of
the criminal justice system is advanced by requir-
ing the prosecution to present all the witnesses,
those whose evidence tends to support the theory
of the prosecution, and, as well, those who may
give evidence tending to exculpate the defendant
or raise a reasonable doubt.[9]

---

[8] The people point out that the rule has been criticized and abro-
gated in other jurisdictions. See 7 Wigmore on Evidence (Chadbourn
rev), §§ 2079-2080, p 536 *et seq*. The criticism is not recent:

"The rule that the prosecution must indorse and call all the
eyewitnesses to a crime of violence who are available, * * * although
rejected or materially modified in most or all other American jurisdic-
tions (16 Ann Cas 918, note; 16 CJ, p 846; 2 Michie on Homicide, p
1362), is too well established in this State to need the citation of
authorities." *People v Raider, supra,* pp 134-135 (1931).

Perhaps in response to the criticism, the Legislature enacted 1941
PA 336; MCL 767.40a; MSA 28.980(1), which provides:

"Witnesses whom the people are obliged by law to call as res gestae
witnesses may be impeached the same as though such witnesses had
been called by the respondent."

Compare *Wellar v People, supra,* pp 23-24, where the Court said:

"The fact that he is compelled to call these witnesses, when he may
not always find them disposed to frankness, entitles him, when it
appears necessary, to press them with searching questions: *Regina v
Ball,* 8 C & P 745 [1839]; *Regina v Chapman,* 8 C & P 558 [1838]. By
this means, and by laying all the facts before the jury, they are quite
as likely to get at the truth as if he were allowed to impeach the
witnesses who disappoint him. Any intelligent jury will readily dis-
cover whether a witness whom the prosecutor has been compelled to
call is fair or adverse, and can make all proper allowance for bias, or
any other influence which may affect his credit. If there is but a
single eyewitness, he could not be impeached, and yet the danger of
falsehood is quite as great, and the chances of its correction much less
than where there are two, and both are called. And if such a witness
need not be called by the prosecution, the defense cannot impeach
him, and must either call him, and run the risk of finding him
against them, or, if they fail to call him, be prejudiced by the
argument that they have omitted to prove what was in their power,
and must have done so because they dared not call out the facts.
There is no fairness in such a practice, and a prosecutor should not be
permitted to resort to it. He is not responsible for the shortcomings of
his witnesses, and he is responsible for any obstacle thrown in the
way of eliciting all the facts."

Similarly, see *People v Deitz, supra; cf. People v Connor, supra.*

[9] The Court declared in *People v Blazenzitz,* 212 Mich 675, 678-679;
180 NW 370 (1920):

"The important question of fact on the trial was the identity of the

## II

Willie Pearson and Lindsay Pearson were convicted of first-degree murder.[10]

Willie Pearson and James Kidd, the victim, lived in the same motel. Kidd was shot in the lobby of the motel. There was testimony that shortly before he was shot the Pearsons and a third man confronted him in his room. Lindsay took jewelry and Willie took money from him. The three men, all armed, then marched Kidd and his girlfriend down the stairs into the lobby. Kidd attempted to have the desk clerk call the police and was shot.

The defense claimed that the killing was not in the perpetration of a robbery. The articles taken from Kidd had previously been stolen from Willie Pearson; they were merely retrieving his property. Kidd gave them the money and said that the remaining property was at another location. The group started for that location. While they were crossing the lobby of the motel, another man ran in from the street, tussled with Kidd and shot him.

Raymond Collins, allegedly the third man in

murderers. *By the failure of the prosecution to indorse the names of Eugene Vincent and Operhall as witnesses and to produce them at the trial, this being a case of homicide, a serious question is presented*, for upon this record the fact remains that Eugene Vincent and Operhall saw men leaving the bank following the shooting. These men were the only known persons who saw the alleged murderers leave the bank building, they were the first to see them after the shooting, they observed them at a different time and place than did the witness Bert R. Vincent. And Eugene Vincent had an opportunity to observe one of the alleged murders at arm's length. The failure to indorse and produce these witnesses *is not a mere irregularity. It is a positive invasion of a substantial right of the defendant under the law.* Such invasions might not be very harmful in cases where defendants have the means to employ counsel to discover the facts, and to prepare a defense, but it would be otherwise with the unfortunate and the helpless poor accused of crime, if subjected to the whim of officers, to the suppression of evidence, to conviction on less than the truth." (Citations omitted.)

[10] MCL 750.316; MSA 28.548.

Kidd's room, was arrested and charged with first-degree murder. At Collins' preliminary examination, Kidd's girlfriend identified him as the third man and he was bound over. The charge was subsequently dismissed because further investigation convinced the authorities that Collins could not have been at the scene of the crime.

At the trial, the Pearsons moved that Collins be indorsed as a res gestae witness and the prosecution required to produce him. An officer responded that three other persons who were also in Kidd's room said that Collins was not present, and that further investigation had confirmed that he was at Selfridge Air Force Base. The judge ruled that Collins was not a res gestae witness.

The Pearsons contend that the prosecution was obliged to produce Collins because one of the prosecution's principal witnesses said he was there. The prosecution responds that the judge correctly determined the disputed question of whether Collins was the third man and, moreover, the third man was an accomplice and, for that reason, not required to be produced.[11] The Pearsons reply that the "accomplice exception" cannot be invoked because the prosecutor, in effect, determined that Collins was not an accomplice when he dismissed the charge.

We agree with the Pearsons that the judge erred in resolving the question whether the arrested

---

[11] The well-established rule is that the people are not required to indorse or produce res gestae witnesses who are accomplices. See *People v McCullough*, 81 Mich 25, 34; 45 NW 515 (1890); *People v Resh*, 107 Mich 251; 65 NW 99 (1895); *People v Baker*, 112 Mich 211; 70 NW 431 (1897); *People v Raider, supra; People v Knoll*, 258 Mich 89; 242 NW 222 (1932); *People v Kennan*, 275 Mich 452; 266 NW 468 (1936); *People v Stewart (On Rehearing)*, 400 Mich 540, 553; 256 NW2d 31 (1977); *People v White*, 401 Mich 482, 508-509; 257 NW2d 912 (1977).

Raymond Collins[12] was at the scene on the hearsay assertions of the officer.

It appears, however, that whether the third man was the arrested Raymond Collins, another man named Raymond Collins, or a man with a different name, he was there as an accomplice. The testimony was that the third man in Kidd's motel room was holding a gun and had participated in the offenses claimed to have been there committed. There was no affirmative evidence that the third man was a mere observer or bystander.

There being no affirmative evidence that Collins, if there at all, was there other than as the third man who participated in the commission of the offenses, the only conclusion justified by the record is that if he was there he was an accomplice.

Accordingly, the judge's conclusion that the prosecutor was not obliged to produce Collins is sustained.

### III

In the case of Willie Wynn, Earl Berry (complainant's brother) had, it appears, beaten his former girlfriend, Jeanette Riley. Wynn, James Moore (Riley's brother), and another person went to the Berry home. Moore entered first. A short time later Wynn entered with a rifle which discharged.

Wynn was charged with assault with intent to commit murder[13] and convicted of assault with intent to do great bodily harm less than murder.[14]

---

[12] It appears that there may have been more than one Raymond Collins. A Raymond Collins may have been in the room and the police may have arrested the wrong Raymond Collins. Be that as it may, the testimony that placed Collins at the scene placed him there as the third armed man.

[13] MCL 750.83; MSA 28.278.

[14] MCL 750.84; MSA 28.279.

At Wynn's trial, the judge ordered the prosecutor to produce Moore, but he was not produced.

Earl Berry had lived with Riley for five years. She had complained that Earl had beaten her and, earlier in the day the alleged assault by Wynn occurred, there was a court hearing regarding the alleged beating.

Wynn testified that he had been friends with Riley for ten years preceding the incident and had been seeing her after Earl Berry moved out of her home, but they did not have a romantic relationship. Earl Berry, who learned that Wynn was seeing Riley, told her he was going "to get" Wynn. The purpose of the visit to the Berry home was to inform Earl that Wynn and Riley were not romantically involved.

The prosecutor produced five eyewitnesses: the complainant, other members of his family, and his girlfriend. The tendency of their testimony was that Moore entered the Berry home and asked to speak to one of the Berrys. Earl Barry was not at home.[15] Two of the Berrys and Moore talked in a bedroom. Wynn ran into the home and, as the three were leaving the bedroom, ordered the complainant to halt, then aimed and fired at him.

Wynn testified that it was Moore who suggested that he go to the Berry home to "straighten things out" and take a rifle with him. He agreed to go but asked that Moore enter first. Moore and Earl Berry were friends and it was decided that it would be better if Moore spoke first to Earl. When they reached the Berry home, Wynn and the third man remained in the car and Moore entered. A few minutes later, Wynn heard screams and the third man said "they are jumping" Moore. Wynn

---

[15] Wynn was not acquainted with the Berrys, and would not have known Earl Berry at sight.

grabbed the rifle and ran into the home. He saw the two Berrys and Moore. He ran toward them, raising the gun, and told them to halt. In the process the gun accidentally discharged. The third man subsequently entered the home.

When the judge granted the motion of Wynn's counsel during the trial to indorse Moore and ordered the prosecutor to produce him, the police located him and asked him to appear; the prosecutor said that the officers said that Moore said he would appear. A subpoena was not served and the prosecutor made no further efforts to produce him.[16] The judge found that the prosecutor had failed to show due diligence to produce Moore and other witnesses, including the third man, whose production the judge had also ordered.[17] He adjourned the case until the next morning so that the prosecutor could produce them or show due diligence. The prosecutor did not make any further effort to produce Moore and rested his case. He argued, nevertheless, in closing that Moore had conspired with Wynn to kill Earl Berry:

"Now James Moore went to that house to create a diversion, ladies and gentlemen. He went there to point out Earl or to get the family involved so that the defendant could go into the house and kill Earl. They were together."

The judge instructed the jury that it was "at liberty" to draw the inference that if Moore had

[16] The duty to produce a res gestae witness is imposed on the prosecution, not the judge. It therefore is of no importance whether the judge issued a bench warrant as the prosecutor suggested he might in an apparently heated exchange.

[17] The Court of Appeals concluded that a new trial was not justified on account of the failure to produce the other witnesses. No issue in that regard is presented on the appeal to this Court.

been produced his testimony would have been "unfavorable" to the people.

Manifestly, Moore and the third man were res gestae witnesses and the prosecutor was obliged to exert due diligence to produce them.

There was no substantial difference between the testimony of the people's witnesses and Wynn. The only issue was whether the shot was intentional or accidental. The people's witnesses were four Berrys and an intimate of one of them. There was "bad blood" between the Berrys and Wynn because of Jeanette Riley.

Moore and the third man who accompanied Wynn to the Berry home could have provided evidence regarding the purpose of the visit and Wynn's expressed intent.[18] Moore was standing about two feet in front of and to the side of the complainant when the shot was fired, and may have been the only person who had an unblocked view of the incident.

The failure to produce Moore cannot be justified on the ground that he was an accomplice if for no other reason than because when the issue of his non-production was raised the prosecutor did not claim that he was an accomplice. The prosecutor's failure to advance that claim is consistent with Wynn's testimony and the actions of the officers called to the scene who arrested Wynn and released Moore upon statements from the Berrys that he was not involved.[19]

---

[18] "The circumstances which, in fact, led to the assault were a part of the *res gestae,* which the jury were entitled to have before them, to show what was the *real nature of the act,* the *quo animo,* state of mind and intention, with which it was done." *Maher v People, supra,* p 225 (emphasis in original).

[19] The prosecutor also asserts that Wynn did not cooperate in the production of Moore. Under the circumstance that the police had located him, the asserted non-cooperation and following argumentative exchange between counsel is not germane.

Moore could have been produced and the trial judge correctly found that there was no justification for the failure to do so.

It was not open to the prosecutor, in lieu of complying with the rule requiring production of res gestae witnesses, to accept an instruction that the jury may infer that the missing witness would testify unfavorably to the people. A jury instruction on a permissible inference is not an adequate substitute for a live witness. Indeed, the instruction is intended for the case where, *despite due diligence,* the witness cannot be produced.[20] A prosecutor does not have the option of calling a res gestae witness or of accepting an adverse jury instruction regarding a permissible inference.

In the instant case the prosecution had presented a strong case through the testimony of members of the complainant's family. Wynn alone had testified in support of his theory of accidental discharge of the gun. The prosecutor had nothing to gain by producing Moore. This, coupled with his willful refusal to produce him and his jury argument, renders his position in this case suspect.

The order of the Court of Appeals reversing Wynn's conviction and remanding for a new trial is sustained. We would hold that because there is reason to believe that the prosecution's lack of due

---

[20] A note to the proposed standard criminal jury instruction, "Failure to Produce Res Gestae Witnesses" (CJI 5:2:14), states:

"If the evidence is insufficient to establish due diligence, then this instruction will not cure the error. The issue should be submitted to the jury only when there are sufficient facts establishing due diligence to warrant the jury's being able to establish due diligence, as an alternative to the judge's making the decision." 1 Michigan Criminal Jury Instructions (Ann Arbor: Institute of Continuing Legal Education), p 5-67.

See *People v Gibson,* 253 Mich 476; 235 NW 225 (1931), and *People v Serra, supra,* where the Court found that the people had exercised due diligence and found no error in giving a similar jury instruction in that situation.

diligence was purposeful, before a post-remand hearing or a new trial, Wynn should have an opportunity to depose all officers and prosecutors who may have questioned Moore, and there shall be produced any statements made by Moore and the records of such interviews. The prosecutor should exert his best efforts to produce Moore; Wynn should be afforded an opportunity to depose him.

## IV

John J. Schwartz was convicted of delivery of heroin.[21]

A Michigan State Police officer testified that he purchased heroin from Schwartz, to whom he had been introduced by an informant, Don "Igor" Cager. Cager was present throughout the transaction. Schwartz claimed entrapment.

Cager was indorsed on the information but not produced at trial. The trooper said that he had last seen Cager about six months before trial.[22] On the day before trial, he began looking for him for the instant case. On the day he testified he made a second trip to Cager's last known address in Algonac, Michigan. No one was at home. He spoke to a police officer and several young people on the street. He went to two restaurants, two bars, a pool hall and a fire station. The judge ruled that a "good faith" effort had been made to locate Cager.

The Court of Appeals reversed, saying that the record "fails to show that the prosecution seriously sought to discover the witness's present

---

[21] MCL 335.341(1)(a); MSA 18.1070(41)(1)(a).

[22] The officer was asked whether he had done "anything" in the five weeks after Cager was indorsed as a witness. He said "yes", that he "saw" "people I dealing dope with [sic]". The prosecutor, on appeal, infers that he spoke to other informants in an effort to locate Cager.

whereabouts".[23] A dissenting judge would have affirmed because, under the circumstances, the judge had not abused "his discretion" in excusing the failure to produce Cager.[24]

The people contend that while the officer "could have done more", because he had no specific leads and the sources *he checked* provided no leads "his efforts were diligent".

It is "the duty of the prosecutor to have subpoenas issued" for indorsed witnesses and "use such other means at hand to have them present at trial".[25] "[T]he positive burden to produce all res gestae witnesses is imposed upon the people to protect the defendant from false accusations and preserve his presumption of innocence. *[People v] Eugene Harris,* [43 Mich App 531; 204 NW2d 549 (1972)]; *People v Kayne,* 268 Mich 186; 255 NW 758 (1934). In essence, the obligation of res gestae witness production is derivative of a defendant's constitutional right to a fair trial and his right to demand prosecutorial proof of his guilt beyond a reasonable doubt. For these reasons 'diligence' means literally what Webster's dictionary says it means: devoted and painstaking application to accomplish an undertaking."[26] Similarly, see *Hurd v People, supra.*

The officer was thus obliged to inquire of persons who might know Cager's whereabouts. He did not do so; he did not attempt to locate him by inquiring of his parents, other family members, neighbors, male or female friends, former employers or governmental authorities.

---

[23] *People v Schwartz,* 62 Mich App 188, 193; 233 NW2d 517 (1975).

[24] *Id.,* p 195.

[25] See *People v Van Vorce,* 240 Mich 75, 78-79; 215 NW 5 (1927); see, also, *People v Zabijak, supra; People v McIntosh,* 389 Mich 82; 204 NW2d 135 (1973).

[26] *People v Johnson,* 51 Mich App 224, 230-231; 214 NW2d 713 (1974).

Although the officer had last seen Cager about six months before the scheduled trial date and the last known address was at least 50 miles from the place of trial, he waited until the day before trial to begin efforts to produce him. He went to that address, apparently the home of Cager's parents. No one was at home. He said he thought Cager's parents worked, but made no effort to locate them or attempt to telephone later. He did not check with neighbors. Inquiry of Cager's parents or neighbors was far more likely to produce information regarding his whereabouts than inquiry at two restaurants, two bars, a pool hall, or a fire station. The reasons are limitless why Cager was not at particular establishments on the day and time the officer entered and leads did not develop from inquiry at such establishments,[27] and why a police officer casually encountered on a street[28] or a few random youths would have no knowledge of his whereabouts. Although Cager was a narcotics informant, the officer did not check drug centers, hospitals, jails or courts.

We agree with the Court of Appeals that the judge erred in focusing on the officer's good faith. The question is whether the prosecution exerted due diligence. The Court of Appeals correctly concluded that this was not a doubtful case that was resolved by the trial judge's exercise of discretion. The failure to make timely inquiry, and any inquiry of other persons living at the address, Cager's parents, neighbors, or friends and of authorities who might have information about his whereabouts, supports its conclusion that the prosecution's efforts were inadequate.

---

[27] The record does not indicate the nature or scope of inquiry at the establishments.

[28] The record indicates that the officer so encountered was asked only whether Cager was in jail.

V

We turn to the question whether there must be a post-trial hearing, such as was required in *People v Robinson, supra,* in cases such as *Wynn* and *Schwartz* where, in the course of the trial, there was a hearing regarding the prosecution's failure to produce the witness and a finding, at trial or on appeal, that the efforts were insufficient.

In *Robinson, supra,* p 634, this Court declared:

"In appeals filed after this opinion is published, a defendant desiring reversal or a new trial because of a failure to produce an unindorsed or an indorsed witness shall, before filing his brief on appeal, move the trial court for a new trial. The prosecutor shall produce or explain why he cannot produce the witness or, as the case may be, why he did not indorse and produce him at the trial. If the witness is produced at the hearing, he shall be examined regarding his knowledge of the crime. If a new trial be denied, the judge shall state his reasons."

The Court of Appeals in both *Wynn* and *Schwartz* declared *Robinson* inapplicable because, in contrast with that case, there had been a hearing during trial in the instant cases:

"[S]ince the trial court has already heard the prosecution's explanations and found them wanting, a remand for an evidentiary hearing would serve *no useful purpose*." *People v Wynn,* 60 Mich App 636, 641; 231 NW2d 269 (1975).

"Since an evidentiary hearing would be futile and would engender needless delay, it is not ordered." *People v Schwartz,* 62 Mich App 188, 194; 233 NW2d 517 (1975).

We agree with the Court of Appeals that where

the issue of due diligence has been explored at the trial, *Robinson* does not require a motion for a new trial and a hearing as a condition precedent to raising the issue on appeal. It would unduly burden and delay the appellate process to require such a post-trial hearing in cases where the trial judge has, after a hearing on the question of due diligence, already ruled, a ruling which more often than not will be affirmed on appeal.

The purpose of a *Robinson* hearing, however, is two-fold. It is not only to determine the reason for a failure to indorse or a failure to produce but also to determine whether the defendant has been prejudiced by non-production of the witness.

Heretofore, reversal and remand for a new trial was automatic whenever an appellate court found that the prosecution did not exert due diligence in discharge of its obligation to produce a res gestae witness.[29] The prosecutor was not given the opportunity of showing that the missing witness's testimony would, for example, have been inculpatory, or that he could not possibly have been produced because, for example, he was dead.

In *Robinson,* the issue concerning the alleged failure to produce a res gestae witness had not been preserved at the trial and appeared to have been an afterthought, the proverbial appellate parachute. To separate substantial post-conviction res gestae claims from those which are mere appellate stalking horses we required that thereafter

---

[29] See, *e.g., People v Germaine, supra; People v Van Vorce, supra; People v Zabijak, supra; People v O'Dell,* 10 Mich App 87; 158 NW2d 805 (1968).

In *Maher v People, supra; Hurd v People, supra; People v Kayne, supra* and *People v Tann, supra,* the issue was whether the omitted testimony was part of the res gestae. This Court found that it was, and reversed and remanded for a new trial.

In *Wellar v People, supra,* and *People v Deitz, supra,* the issue was whether the prosecutor was obliged to call the witness. This Court found that he was, and reversed and remanded for a new trial.

a post-trial motion be filed in such a case before the issue may be assigned on appeal.

While we are persuaded that the prosecutor should have an opportunity, even in a case where the issue was preserved by objection at the trial, to show that the defendant was not prejudiced by the failure to produce the witness, there is a significant difference, in terms of securing prosecutorial compliance with the res gestae rule, between a case where the issue is duly preserved at the trial level and one where it is raised for the first time on appeal. Therefore, to avoid undermining the long-established rule requiring indorsement and due diligence in the production of res gestae witnesses, we would carefully circumscribe the nature of the inquiry in such a post-remand hearing.

Where the issue of non-production is raised at the trial and it is determined at trial or on appeal that the prosecution did not exert due diligence, the question at a post-remand hearing should be whether the defendant suffered prejudice at the trial, not whether the missing witness's testimony may at a subsequent trial bring about a different result. To frame the question in terms of whether there may be a different verdict or finding at a new trial would mean that if the witness could not be produced there would be no new trial, and would thus reward the prosecution for its lack of diligence, and would create a positive incentive not to locate and produce the witness for a post-remand hearing or new trial. If the question was whether there may be a different result at a new trial, a prosecutor might seek a post-remand hearing with a view to prevailing simply on an officer's recital of his unsuccessful efforts to locate and produce the witness. Prosecutorial authorities who do not exert due diligence before the trial are not

likely to exert greater efforts on remand unless there is some advantage to them—avoiding a new trial—in doing so.

If the prosecutor establishes that the witness could not possibly have been produced at the trial or his testimony would have been of no possible assistance to the defendant, then the defendant was not prejudiced at the trial and a new trial is not required.[30]

In assessing whether the witness's testimony might possibly have assisted the defendant, it should be borne in mind that the defendant was entitled to jury appraisal, not a judge's appraisal, of the worthiness of the witness's testimony. It is again pertinent that the witness's non-appearance at the trial is attributable to the prosecution's failure to discharge its obligation to produce the witness.

The question whether the evidence adduced by the witness at the post-remand hearing might possibly have assisted the defendant at the trial will generally depend on an appraisal of whether his evidence might possibly have contributed to a result more favorable to the defendant. The witness's testimony must consequently be considered in light of the other evidence adduced at the trial by the prosecution and defense. The focus of the inquiry, however, should be primarily on the pertinency of the witness's testimony adduced at the post-remand hearing. To avoid invading the jury's province of determining the credibility of witnesses and the weight of the evidence, the consideration of the other evidence adduced by the prose-

---

[30] This test is to be applied only at a post-remand hearing *after* there has been a finding by a trial or appellate court that the prosecutor failed to exercise due diligence. Whether the prosecutor has exerted adequate efforts to produce a res gestae witness at trial shall continue to be determined under the due diligence standard.

cution or defense at trial should be limited to the
nature of such other evidence and should not
extend to consideration of its quality or weight in
relation or comparison to the witness's testimony.

If the witness cannot be produced for a post-
remand hearing (unless the prosecutor establishes
further that the witness could not possibly have
been produced at the trial), the conviction must be
reversed because there is no way of knowing
whether at the trial he might possibly have given
testimony of assistance to the defendant. Requir-
ing a new trial in such a case will encourage
prosecutors to locate witnesses like Moore *(Wynn)*
and Cager *(Schwartz)* and to produce them at a
post-remand hearing which may avoid a new trial.

While the argument can be made that there is
no point to a new trial where the witness cannot
be produced—the testimony at the second trial
will duplicate the first[31]—we are persuaded that
there is no other satisfactory means of securing
compliance by the prosecution with its obligation
to produce all res gestae witnesses. Retrial of the
relatively few cases where an appellate court re-
verses because of a failure to exert due diligence is
the price of securing compliance by the prosecu-
tion with the res gestae rule in the thousands of
other cases where the fair and speedy administra-
tion of justice depends on compliance with that
rule.

We add nothing to the burden of the prosecution
by our dispositions and rulings in these cases; it is
worth repeating that reversal and remand for a

[31] Where a new trial is granted on the ground that the verdict is
contrary to the great weight of the evidence, the testimony at a
second trial may duplicate the testimony at the first. That has never
been thought to negate the judge's power to grant a new trial on that
ground, nor is he authorized on that account to, in effect, direct a
verdict. *Cf. People v Johnson*, 397 Mich 686; 246 NW2d 836 (1976).

new trial has been the automatic remedy in the past for failure to produce the witness without opportunity for a post-remand hearing to show that the defendant was not prejudiced at the trial.

## VI

In *Robinson, supra,* p 634, the Court also declared:

"The final disposition of this cause is held in abeyance. If the trial judge finds that a new trial is required, this Court will enter an order consistent with that determination. If not, the transcript, findings of the trial court and the supplemental briefs of the parties will be considered by this Court and a final disposition of the entire matter thereafter will be made."

A similar procedure shall be followed, in effect, whenever an appellate court reverses a defendant's conviction and orders a new trial on the ground that the prosecution failed to discharge its obligation to produce a witness. If the prosecutor seeks a post-remand hearing, either party is entitled to appellate review of an adverse determination. Within 30 days of the trial court's order, the aggrieved party may seek such review by filing a statement to that effect with the appellate court. The transcript, judge's statement of findings and reasons, order of the trial court, and supplemental briefs shall be forwarded promptly, within the time directed by the appellate court, to that court for its review and disposition of the matter.

We concur in the affirmance of the decision of the Court of Appeals in *Wynn* and *Schwartz,* and remand for a new trial, subject to the prosecutor's right to seek, within 30 days, a hearing on

whether the defendant was prejudiced by the failure to produce the witness.

## VII

We address the remaining issues in *Pearson*.

The Pearsons contend that the judge should have granted a motion for a mistrial because of the prosecutor's actions in charging Willie Pearson's girlfriend with perjury and subpoenaing two persons who were in Kidd's room and placing them under bond to appear as witnesses at her trial on that charge. We conclude that it does not appear that the Pearsons were thereby deprived of a fair trial. The girlfriend adhered at the trial to her preliminary examination testimony corroborating Lindsay Pearson's testimony that a stranger burst into the lobby and shot Kidd; she did not change her exculpatory testimony. Since the two witnesses were not subpoenaed or placed under bond until after they had testified at the Pearsons' trial, there is no reason to believe that their testimony was influenced by the prosecutor's decisions to charge the girlfriend or to subpoena or place them under bond. Nor is there any reason to believe that but for those decisions Kidd's girlfriend would have changed her damaging preliminary examination testimony.

The Pearsons further contend that the innuendo of the prosecutor's questioning of Pearson's girlfriend was that she had earlier given inconsistent testimony which he improperly reinforced by suggestively flipping through sheets of paper as he propounded questions. While the judge might have earlier stopped the prosecutor from pursuing this form of inquiry, the questions and answers dealt with a subsidiary issue and the Pearsons were not thereby prejudiced.

Nor do we find merit in the contention that the prosecutor departed from the record in his summation. Defense counsel had stated in closing argument that Raymond Collins was bound over for trial and that the officer in charge of the case had then moved to dismiss those charges. He argued that since Kidd's girlfriend had testified under oath that Collins was the third man the jury could infer that the prosecution did not believe her and that, by its verdict, it should say to the prosecution "why do you expect us to?" In those circumstances, the prosecutor was within the bounds of permissible argumentative response in asking the jury to infer, rather, that "the police and the prosecution know that he wasn't the man". We hasten to add that if the same argument had been advanced in terms of a defendant's guilt, *i.e.,* "you may infer that the police and the prosecutor know that the defendant is guilty", a different question would be presented.[32]

The judge instructed the jury on the defense's theory. It was not until after he completed his instructions that he was asked to instruct that if the jurors concluded that the killing in the lobby was not a "continuation" of a robbery in Kidd's room they could not convict the Pearsons of first-degree murder. When this instruction was requested, the judge said that if it were to be given it would be necessary to instruct on lesser degrees of murder, which would be inconsistent with de-

---

[32] The prosecution's theory was not buttressed, the defense was not deprecated by the argumentative response that the police and prosecutor knew that Collins was not the third man in *Kidd's room.* If the Pearsons had named the third man who allegedly entered the *lobby* and shot Kidd and a similar argument had been made, *e.g.,* you may infer that the police and prosecution know that the man named by the Pearsons did not enter the lobby and shoot Kidd, a different question would also be presented. See ABA Standards for Criminal Justice Relating to the Prosecution Function (Approved Draft, 1971), § 5.8(b); Code of Professional Responsibility, DR 7-106(C)(3).

fense counsel's request that the jury be instructed to convict of first-degree murder or acquit. There was no error.

The jury was instructed that the presumption of innocence attaches until "each and every one of you are satisfied beyond a reasonable doubt of each defendant's guilt". After the jury brought in its verdicts of guilty, experienced and able defense counsel responded in the negative when asked whether there was anything further, and thus the jury was not polled. The Pearsons were not deprived of a fair trial by the judge's failure to instruct that the verdict must be unanimous.

Finally, while *People v Jenkins,* 395 Mich 440; 236 NW2d 503 (1975), requires an instruction on second-degree murder in a first-degree murder case without regard to whether the instruction is requested or declined, by its terms the rule of that case applies only to cases tried after January 1, 1976. The trial in the instant case concluded February 25, 1974.

The convictions of the Pearsons are affirmed.

The cases of Wynn and Schwartz are remanded for new trials.

The Court of Appeals is affirmed in all three cases.

KAVANAGH, C.J., and WILLIAMS, J., concurred with LEVIN, J.